## MILLARD v. ROBERTS.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 234. Argued April 18, 1906.—Decided May 21, 1906.

Revenue bills, within the meaning of the constitutional provision that they must originate in the House of Representatives and not in the Senate are those that levy taxes in the strict sense of the word and are not bills for other purposes which may incidentally create revenue.

An act of Congress appropriating money to be paid to railway companies to carry out a scheme of public improvements in the District of Columbia, and which also requires those companies to eliminate grade crossings and erect a union station, and recognizes and provides for the surrender of existing rights, is an act appropriating money for governmental purposes and not for the private use exclusively of those companies.

The acts of Congress of February 12, 1901, 31 Stat. 767, 774, and of February 28, 1903, 32 Stat. 909, for eliminating grade crossings of railways and erection of a union station in the District of Columbia and providing for part of the cost thereof by appropriations to be levied and assessed on property in the District other than that of the United States are not unconstitutional either because as bills for raising revenue they should have originated in the House of Representatives and not in the Senate, or because they appropriate moneys to be paid to the railway companies for their exclusive use; and assuming but not deciding that he can raise the question by suit, a taxpayer of the District is not oppressed or deprived of his property without due process of law by reason of the taxes imposed under said statutes.

THE facts are stated in the opinion.

*Mr. Josiah Millard, pro se,* appellant:

Taxes on land or the profits issuing from lands are taxes in the strict sense of the word: they are direct taxes within the meaning of the constitutional provision respecting the apportionment of representatives and direct taxes, and, therefore, also necessarily within the meaning of the provision that all bills for raising revenue shall originate in the House of Representatives. *Pollock* v. *Farmers' Loan and Trust Co.,* 157 U. S. 429;

S. C., 158 U. S. 601; Story on Constitution, § 880 and note; *Bank* v. *Nebeker*, 3 App. D. C. 190, 198–201; *S. C.*, 167 U. S. 196, 203; Cooley on Taxation, 3d ed., 95, 96 and notes; *License Tax Cases*, 5 Wall. 462; *Binns* v. *United States*, 182 U. S. 292; *Downs* v. *Bidwell*, 194 U. S. 489, 496.

The chief characteristic of an act which lays a tax for any purpose whatever, is, that it is intended to raise revenue by taxation; and no other purpose, pretended or real, can deprive it of the nature of a bill for raising revenue. Bills which lay taxes on lands or incomes for any purpose whatever are "bills for raising revenue within the purview of the Constitution." Story Const. § 880 and note; *Income Tax Cases*, 157 U. S. 429; Cong. Record, February 16, 1905 (Payne's citations).

It does not matter that this legislation relates to the District of Columbia, even if it related exclusively to it; for notwithstanding any rule of either House, the power of Congress in this District is restricted and qualified by all the general limitations, express or implied, which are imposed on its authority by the Constitution. *Curry* v. *District of Columbia*, 14 D. C. App. 429, 438–445; *Callan* v. *Wilson*, 127 U. S. 127; *Thompson* v. *Utah*, 170 U. S. 343, 346; *United States* v. *More*, 3 Cranch, 160, note; *Loan Association* v. *Topeka*, 20 Wall. 655; *Loughborough* v. *Blake*, 5 Wheat. 317, 325; *Wilkes County* v. *Coler*, 180 U. S. 506, 513–525; *Cohens* v. *Virginia*, 6 Wheat. 264, 446.

If a tax is imposed upon one of the political subdivisions of a country, as in the present case, the purpose must not only be a public purpose as regards the people of that subdivision, but it must also be local. *People* v. *Town of Salem*, 20 Michigan, 452, 474; *Cohens* v. *Virginia*, 6 Wheat. 264, 446; *Loughborough* v. *Blake*, 5 Wheat. 317, 325.

The people of the District of Columbia cannot be taxed to pay "the debts of the United States," in whole or in part, whether equitable or legal, unless the taxes on them for that purpose be, if indirect, uniform throughout the United States, and be, if direct, apportioned among the States and Territories in proportion to population; and hence the case of *United*

*States* v. *Realty Co.*, 163 U. S. 440, 444, the *Sugar Bounty* case, is no precedent here, even if these taxes were designed to pay a debt, and not provide *uno flatu* a bounty for a private corporation and a stately edifice for the adornment of the capital of the nation, as such. The cases above cited sustain this contention.

The right of taxation can only be used in aid of a public object, an object which is within the purpose for which governments are established, and cannot, therefore, be exercised in aid of enterprises strictly private, even though, in a remote or collateral way, the local public may be benefited thereby. *Loan Association* v. *Topeka*, 20 Wall. 655, 664; *Cole* v. *LaGrange*, 112 U. S. 1, 6; *Miles Planting Co.* v. *Carlisle*, 5 D. C. App. 138; *Hanson* v. *Vernon*, 27 Iowa, 28; *Whiting* v. *Sheboygan, Fond du Lac R. R. Co.*, 25 Wisconsin, 167; *Sweet* v. *Hulbert*, 51 Barb. (N. Y.) 312; *Lowell* v. *Boston*, 111 Massachusetts, 454; *Central Branch U. P. R. R. Co.* v. *Smith*, 23 Kansas, 533.

It is admitted by the Court of Appeals that all three of the acts in question originated in the Senate; and the same fact also appears affirmatively by reference to the Congressional Record.

A literal compliance with the mandatory provisions of the Constitution, whether affirmative or negative, is a condition precedent to the validity of any law laying taxes on the property of the people, and attempts to evade those provisions constitute violations of them. *Wilkes County* v. *Coler*, 180 U. S. 506, 521, 522; *Baltimore* v. *Gill*, 31 Maryland, 375, 387, 388; *Rodman* v. *Munson*, 13 Barb. (N. Y.) 63; *People* v. *Nicoll*, 3 Selden, 9, 139.

All remedial laws, such as the constitutional provisions respecting taxation and due process of law, must be so construed as to repel the mischief and advance the remedy, by searching out and nullifying evasions as well as violations of them. *Atty. General* v. *Meyricke*, 2 Vesey, Sr. 44; *Atty. General* v. *Day*, 1 Vesey, Sr. 218; *Atty. General* v. *Davies*, 9 Vesey, Jr. 535, 541; *Marbury* v. *Madison*, 1 Cranch, 137, 175, 176; *Ex parte Gar-*

*land,* 4 Wall. 333; *Cummings* v. *Missouri,* 4 Wall. 237; *Balti-more* v. *Gill,* 31 Maryland, 375; *Cooke County* v. *Industrial School for Girls,* 125 Illinois, 540, 564, 565; *Farmer* v. *St. Paul,* 67 N. W. Rep. 990; *Washingtonian Home* v. *Chicago,* 157 Illinois, 414, 428; *Central Transportation Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 40 *et seq.; Loan Association* v. *Topeka,* 20 Wall. 655; *Ward* v. *Joplin,* 186 U. S. 142, 152; *Brownsville* v. *League,* 129 U. S. 493; *Bank of San Francisco* v. *Dodge, Assessor,* 197 U. S. 70.

No conclusive presumption can arise to defeat the operation of the mandatory and remedial provisions of the Constitution respecting taxation and due process of law, which are self-executing. *Wilkes County* v. *Coler,* 180 U. S. 506, 521, 522; *Post* v. *Supervisors,* 105 U. S. 657, 667; *Town of South Ottawa* v. *Perkins,* 94 U. S. 260.

*The Solicitor General* for the Treasurer of the United States; *Mr. Wayne Mac Veagh, Mr. Frederic D. McKenney* and *Mr. John S. Flannery* for Philadelphia, Baltimore & Washington R. R. Co.; *Mr. George E. Hamilton* and *Mr. Michael J. Colbert* for Baltimore & Ohio R. R. Co. and Washington Terminal Co.; *Mr. Edward H. Thomas* for the Commissioners of the District of Columbia, appellees, submitted:

The act of February 28, 1903, and the two acts approved February 12, 1901, do not appropriate public moneys or levy taxes upon the taxpayers of the District of Columbia for private purposes. The project was in response to a general desire of the public, to abolish dangerous grade crossings and to remove the railroad tracks from the mall. The acts were based on an ample consideration, irrespective of the general power of Congress in the premises.

We submit that Congress, in the acts themselves, having declared that the appropriations were made upon a valuable consideration and for a public purpose, the matter is not open to review in the courts. Cooley's Principles of Constitutional Law, 57, 58; Cooley on Taxation, 2d ed., 111.

This court has repeatedly held that, although railroad corporations are private corporations as distinguished from those created for municipal and governmental purposes, their uses are public. *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556, 571.

The power of States, counties and municipalities to aid in the construction of railroads, upon the ground that railroads are *quasi* public institutions created and existing for the benefit of the public at large, is well established. *Olcott* v. *Supervisors*, 16 Wall. 698; *Curtis* v. *County of Butler*, 24 How. 447, 449; *Rogers* v. *Burlington*, 3 Wall. 665; *St. Joseph* v. *Rogers*, 16 Wall. 663; *Gillman* v. *Sheboygan*, 2 Black, 515; *Larned* y. *Burlington*, 4 Wall. 276; *Railroad Co.* v. *County of Otoe*, 16 Wall. 673; *Township of Pine Grove* v. *Talbott*, 19 Wall. 676; *United States* v. *Railroad Co.*, 17 Wall. 330; *Loan Assn.* v. *Topeka*, 20 Wall. 661; *Otoe Co.* v. *Baldwin*, 111 U. S. 15.

The United States possesses complete jurisdiction, both of a political and municipal nature, over the District of Columbia. When Congress, acting as the municipal legislature of said District, in the exercise of the police power, enacts legislation for the benefit of the health and safety of the community and makes an appropriation and levies an assessment to carry said legislation into effect, the propriety of its action is not open to review by the courts. *Wight* v. *Davidson*, 181 U. S. 371, 381; *Wilson* v. *Lambert*, 168 U. S. 611; *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556. See also *Wabash R. R. Co.* v. *Defiance*, 167 U. S. 88, 98; *Chicago &c. R. R.* v. *Nebraska*, 170 U. S. 57, 74.

But even if the appropriations made by the acts of 1901 and 1903 could be regarded as donations they would still be legal and the acts providing therefor constitutional and valid.

From the beginning of this Government, Congress has made donations for the benefit of public service corporations, in the nature of land grants, subsidies and bounties, and such donations have been invariably sustained. *Allen* v. *Smith*, 173 U. S. 402; *United States* v. *Realty Co.*, 163 U. S. 440.

Said acts of 1901 and 1903 are not revenue or tax measures in the sense contemplated by the Constitution.

The provisions of section 7, article I of the Constitution, which requires that "all bills for raising revenue shall originate in the House of Representatives," cannot apply to any of the acts involved in this case, even if we should admit for the purposes of the argument that said acts did originate in the Senate instead of in the House of Representatives.

By "bills" is meant "money bills." Story's Constitution, § 874. In practice it is applied to bills to levy taxes in the strict sense of the word. 2 Elliott's Debates, 283, 284; Story's Constitution, § 880.

*Twin City Bank* v. *Nebeker*, 167 U. S. 196, is decisive of the question.

The act of February 28, 1903, from the recitals in its enacting clause and the fact that it has received the approval of the President and has been regularly enrolled among the statutes of the United States, must be presumed to have been passed by Congress in strict accord with the letter and spirit of the Constitution, and resort cannot be had to the journals of the two houses to overthrow this presumption. *Field* v. *Clark*, 143 U. S. 649, 680; *Harwood* v. *Wentworth*, 162 U. S. 547, 562; *Twin City Bank* v. *Nebeker, supra.*

MR. JUSTICE McKENNA delivered the opinion of the court.

This is a bill in equity to enjoin Ellis H. Roberts, as Treasurer of the United States, from paying to any person any moneys of the District of Columbia, under certain acts of Congress [1]

---

[1] An act entitled "An act to provide for eliminating certain grade crossings of railroads in the District of Columbia, to require and authorize the construction of new terminals and tracks for the Baltimore and Ohio Railroad Company in the city of Washington, and for other purposes," approved February 12, 1901; an act entitled "An act to provide for eliminating certain grade crossings on the line of the Baltimore and Potomac Railroad Company, in the city of Washington, D. C., and requiring said company to depress and elevate its tracks, and to enable it to relocate

(31 Stat. 767, 774; 32 Stat. 909), and to enjoin the other defendants from carrying into effect said acts of Congress, and that said acts "be declared null and void for want of constitutional authority." Defendants interposed demurrers to the bill, which were sustained by the Supreme Court, and a decree entered dismissing the bill. The Court of Appeals affirmed the decree.

The principal allegations of the bill are that the railroad defendants are private corporations and all interested in the railway and terminal facilities of the District of Columbia; that the District of Columbia owns no stock in any of the companies nor is otherwise interested in any of them save as useful private enterprises, and yet it is required by said acts, "without any lawful consideration therefor," to pay the Baltimore and Potomac Railroad Company the sum of $750,000, and a like sum to the Baltimore and Ohio Railroad Company, "to be levied and assessed upon the taxable property and privileges in the said District other than the property of the United States and the District of Columbia," and for the exclusive use of said corporations respectively, "which is a private use, and not a governmental use;" that the public moneys of the District of Columbia are raised chiefly by taxation on the lands therein, and that the complainant is obliged to pay and does pay direct taxes on land owned by him therein. And the bill also alleges that the acts of Congress are "acts which provide for raising revenue and are repugnant to article I, section 7, clause 1, of the Constitution of the United States, and are, therefore, null and void ab initio, and to their entire extent, because they and each and every one of them originated in the Senate and not in the House of Representatives." Certain volumes of the Congressional Record are referred to and made part of the bill.

---

parts of its railroad therein, and for other purposes," approved February 12, 1901; an act entitled "An act to provide for a union railroad station in the District of Columbia and for other purposes," approved February 28, 1903.

In other allegations of the bill are expressed the limitations upon the power of the United States and the District of Columbia as to taxation; that the acts of Congress complained of are repugnant to the Constitution of the United States; that public funds are appropriated for private use, and that exorbitant taxes will be required to meet the legitimate expenses of the District of Columbia, and appellant will thereby be oppressed and deprived of his property without due process of law.

The first contention of appellant is that the acts of Congress are revenue measures, and therefore should have originated in the House of Representatives and not in the Senate, and to sustain the contention appellant submits an elaborate argument. In answer to the contention the case of *Twin City Bank* v. *Nebeker*, 167 U. S. 196, need only be cited. It was observed there that it was a part of wisdom not to attempt to cover by a general statement what bills shall be said to be "bills for raising revenue" within the meaning of those words in the Constitution, but it was said, quoting Mr. Justice Story, "that the practical construction of the Constitution and the history of the origin of the constitutional provision in question proves that revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes, which may incidentally create revenue." 1 Story on Constitution, § 880. And the act of Congress which was there passed on illustrates the meaning of the language used. The act involved was one providing a national currency, and imposed a tax upon the average amount of the notes of a national banking association in circulation. The provision was assailed for unconstitutionality because it originated in the Senate. The provision was sustained, this court saying:

"The tax was a means for effectually accomplishing the great object of giving to the people a currency that would rest, primarily, upon the honor of the United States and be available in every part of the country. There was no purpose, by the act or by any of its provisions, to raise revenue to be applied

in meeting the expenses or obligations of the Government."

This language is applicable to the acts of Congress in the case at bar. Whatever taxes are imposed are but means to the purposes provided by the act.

The legality of those purposes is attacked in the other contentions of appellant. All of the contentions rest upon the correctness of the allegation that the moneys provided to be paid to the railroad companies are for the exclusive use of the companies, "which is a private use and not a governmental use."

The titles of the acts are the best brief summary of their purposes, and those purposes are obviously of public benefit. We do not think that it is necessary to enter into a discussion of the cases which establish this. The scheme of improvement provided by the acts required a removal of the railroads from their situations, large expenditures of money by the companies, and the surrender of substantial rights. These rights are recognized and their surrender expressed to be part of the consideration of the sums of money paid to the companies. Indeed there is an element of contract not only in the changes made but in the manner and upon the scale which they are required to be made. As remarked by Mr. Justice Morris, speaking for the Court of Appeals:

"The case is practically that of a contract between the United States and the District of Columbia on the one side and the railroad companies on the other, whereby the railroad companies agree to surrender certain rights, rights of property as well as other rights, and to construct a work of great magnitude, greater perhaps than their own needs require, but which Congress deems to be demanded for the best interest of the national capital and by the public at large; and for this surrender of right and this work of magnitude commensurate with the public demand, Congress agrees to pay a certain sum, partly out of the funds of the United States and partly out of the funds of the District of Columbia. It is a simple case of bargain and sale, like any other purchase."

We have assumed that appellant, as a taxpayer of the District of Columbia, can raise the questions we have considered, but we do not wish to be understood as so deciding.

*Decree affirmed.*

Mr. Justice Harlan concurs in the result only.