## UNITED STATES v. McCONNELL.

(District Court, E. D. Pennsylvania. February 4, 1926.)

Internal revenue ⬤=44—Prohibition director not punishable as person employed under "revenue law" or "revenue provisions of a law."

National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), being primarily intended to carry out Const. Amend. 18, is not a "revenue law," which is a law to raise revenue, not one in which such purpose is merely incidental, and contains no "revenue provisions," purpose of section 35, providing for double tax and additional monetary penalties for illegal manufacture or sale of liquor, being penal, so that prohibition director, appointed by Commissioner of Internal Revenue under section 38, is not a person appointed or acting under "revenue law," or "revenue provisions of a law," and hence is not subject to punishment, under Rev. St. § 3169, as extended by Act Feb. 8, 1875, § 23 (Comp. St. §§ 5889, 5890), for making opportunity for person to

defraud United States or permitting violation of law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Revenue Law.]

William C. McConnell was indicted for unlawfully making an opportunity for a person to defraud the United States and permitting violation of a revenue law. On demurrer to indictment. Demurrer sustained.

George W. Coles, U. S. Atty., and Francis B. Biddle, Asst. U. S. Atty., both of Philadelphia, Pa.

Henry W. Braude, George S. Russell, Murdoch Kendrick, and John C. Bell, all of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The indictment contains nine counts. Count 1 charges that "the said defendant, William C. McConnell, being then and there an officer or agent appointed and acting under the authority of a revenue law or revenue provision of a law of the United States, viz. the National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.] and supplements and regulations, did willfully, knowingly, and unlawfully make an opportunity for a person or persons presently to this grand inquest unknown to defraud the United States." It recites the appointment of the defendant by the Commissioner of Internal Revenue as prohibition director for the state of Pennsylvania.

Counts 2 to 9, inclusive, charge that the defendant, "being then and there an officer or agent appointed and acting under the authority of a revenue law or revenue provision of a law of the United States, as more particularly set forth in count 1 of this indictment, did knowingly, willfully, unlawfully, negligently, or designedly permit a violation of the said law by another person or persons presently unknown."

In each count the particular manner in which and means by which the offense charged is alleged to have been committed, are set out. The offenses charged are under section 3169 of the Revised Statutes as extended by section 23 of the Act of February 8, 1875 (Comp. Stat. §§ 5889, 5890). The pertinent parts of section 3169 are as follows:

"Every officer or agent appointed and acting under the authority of any revenue law of the United States—

*    *    *    *    *

"Fifth—who makes opportunity for any person to defraud the United States; or,
*  *  *

"Seventh—who negligently or designedly permits any violation of the law by any other person, *  *  * shall be dismissed from office, and shall be held to be guilty of a misdemeanor," etc.

Section 23 of the Act of February 8, 1875, provides:

"That all acts and parts of acts imposing fines, penalties, or other punishment for offenses committed by an internal revenue officer or other officer of the Department of the Treasury of the United States, or under any bureau thereof, shall be, and are hereby, applied to all persons whomsoever, employed, appointed, or acting under the authority of any internal revenue or customs law, or any revenue provision of any law of the United States, when such persons are designated or acting as officers or deputies, or persons having the custody or disposition of any public money."

The National Prohibition Act is described in its title as:

"An act to prohibit intoxicating beverages, and to regulate the manufacture, production, use, and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the development of fuel, dye, and other lawful industries."

Under title 2, section 38, of the Act (Comp. St. Ann. Supp. 1923, § 10138½y), the Commissioner of Internal Revenue is authorized to appoint such assistants, etc., as he may deem necessary for the enforcement of the provisions of the act.

The demurrer raises the question whether the defendant, having been appointed prohibition director for the state of Pennsylvania for that purpose, comes within the description in section 3169, R. S., as extended by the Act of February 8, 1875, of a person "employed, appointed, or acting under the authority of any internal revenue *  *  * law, or any revenue provision of any law of the United States." The answer to that question depends on whether the prohibition law is a revenue law or contains revenue provisions which would make the defendant, appointed and acting under it, amenable to punishment for the offenses charged in the indictment. There is no purpose expressed in the title of the act to raise revenue, and it is not open to question that it was passed for the primary purpose of carrying into effect the Eighteenth Amendment to the Constitution.

What is meant by the term "revenue laws" has been decided in numerous cases. In United States v. Norton, 91 U. S. 566, 23 L. Ed. 454, where it was contended that the statute of limitations applicable to the prosecution of a clerk in the post office for embezzlement of money order funds was that prescribed in an act punishing crimes arising under the revenue laws, the Supreme Court, in an opinion by Mr. Justice Swayne, said:

"It is a matter of common knowledge that the appellative 'revenue laws' is never applied to the statutes involved in these classes of cases. The Constitution of the United States (article 1, § 7) provides that 'all bills for raising revenue shall originate in the House of Representatives.' The construction of this limitation is practically well settled by the uniform action of Congress. According to that construction, it 'has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which incidentally create revenue.' Story, Const. § 880. 'Bills for raising revenue,' when enacted into laws, become revenue laws. Congress was a constitutional body sitting under the Constitution. It was, of course, familiar with the phrase 'bills for raising revenue,' as used in that instrument, and the construction which had been given to it. The precise question before us came under the consideration of Mr. Justice Story, in United States v. Mayo, 1 Gall. 396 [Fed. Cas. No. 15,755]. He held that the phrase 'revenue laws,' as used in the act of 1804, meant such laws 'as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government.' The same doctrine was reaffirmed by that eminent judge in United States v. Cushman [2 Sumn.] 426 [Fed. Cas. No. 14,908]. These views commend themselves to the approbation of our judgment."

In Twin City Bank v. Nebeker, 167 U. S. 196, 17 S. Ct. 766, 42 L. Ed. 134, the question was whether section 41 of the National Banking Act of June 3, 1864 (R. S. § 5214), imposing taxes upon the average amount of notes in circulation of a banking association, was a revenue law. Mr. Justice Harlan, for the court, said:

"It is sufficient in the present case to say that an act of Congress providing a national currency secured by a pledge of bonds of the United States, and which in the furtherance of that object, and also to meet the expenses attending the execution of the act, imposed a tax on the notes in circulation of the bank-

ing associations organized under the statute, is clearly not a revenue bill, which the Constitution declares must originate in the House of Representatives. Mr. Justice Story has well said that the practical construction of the Constitution and the history of the origin of the constitutional provision in question proves that revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue. 1 Story on Const. § 880. The main purpose that Congress had in view was to provide a national currency based upon United States bonds, and to that end it was deemed wise to impose the tax in question. The tax was a means for effectually accomplishing the great object of giving to the people a currency that would rest, primarily, upon the honor of the United States, and be available in every part of the country. There was no purpose by the act or by any of its provisions to raise revenue to be applied in meeting the expenses or obligations of the government."

In Millard v. Roberts, 202 U. S. 429, 26 S. Ct. 674, 50 L. Ed. 1090, it was held that the Acts of Congress of February 12, 1901 (31 Stat. 767, 774), and February 28, 1903 (32 Stat. 909), for eliminating grade crossings of railways, and the erection of the union station in the District of Columbia, and providing for part of the cost thereof by appropriations to be levied and assessed in the District, were not unconstitutional, as bills for raising revenue, because they originated in the Senate and were therefore repugnant to article 1, § 7, cl. 1, of the Constitution. Mr. Justice McKenna in his opinion says: "In answer to the contention the case of Twin City Bank v. Nebeker, 167 U. S. 196 [17 S. Ct. 766, 42 L. Ed. 134], need only be cited," and follows the language of the court in that case, quoting Mr. Justice Story: "That revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes, which may incidentally create revenue."

In United States v. Hill, 123 U. S. 681, 8 S. Ct. 308, 31 L. Ed. 275, where the question was whether section 844 of the Revised Statutes (Comp. St. § 1414), providing for the payment by the clerks of the Circuit Courts into the Treasury of the surplus moneys received by them as the fees and emoluments of office, is a revenue law, the court said, through Mr. Chief Justice Waite, that:

"The term 'revenue law,' when used in connection with the jurisdiction of the courts of the United States, means a law imposing

duties on imports or tonnage, or a law providing in terms for revenue; that is to say, a law which is directly traceable to the power granted to Congress by section 8, article 1, of the Constitution, 'to lay and collect taxes, duties, imposts, and excises.' "

In Twin Falls Canal Co. v. Foote (C. C.) 192 F. 583, a case involving the question whether the Reclamation Act of June 17, 1902 (Comp. St. §§ 4700–4708), is a revenue act, the court said:

"It is clear that, in so far as it is a feature at all, revenue is an incident only, and not the primary purpose of the act, and it therefore follows that the act does not fall within the terms of section 7 of article 1 of the Constitution of the United States, providing that 'all bills for raising revenue shall originate in the House of Representatives.' 'Bills for raising revenue,' it is generally thought, are such as 'levy taxes in the strict sense of the word'; and the constitutional limitation 'has not been understood to extend to bills for other purposes, which may incidentally create revenue.' Story on the Constitution, § 880; United States v. Norton, 91 U. S. 566, 23 L. Ed. 454; Twin City Bank v. Nebeker, 167 U. S. 196, 17 S. Ct. 766, 42 L. Ed. 134; Millard v. Roberts, 202 U. S. 429, 26 S. Ct. 674, 50 L. Ed. 1090."

The question whether the National Prohibition Act is a revenue law has arisen in the consideration of the right of removal of suits on prosecutions commenced in the state courts. In Smith v. Gilliam (D. C.) 282 F. 628, the question before the court was whether a suit brought against prohibition officers in a state court, and removed to the United States District Court, was properly removable under the provisions of section 33 of the Judicial Code, as amended by the Act of August 23, 1916 (Comp. St. § 1015), authorizing revenue officers to remove civil suits against them on account of any act done under color of their office or of any revenue law. Judge Evans, in a careful and well-reasoned opinion, reached the conclusion that the National Prohibition Act is not a revenue law, within the meaning of section 33 of the Judicial Code, and that prohibition officers are not revenue officers.

But the government insists that title 2, section 35, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½v), providing that, upon evidence of illegal manufacture or sale of intoxicating liquors, a tax shall be assessed against and collected from the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers, and $1,000 on manufacturers, is a provision for the levying of a tax, and is therefore a revenue provision of the National Prohibition Act. That question was conclusively settled by the Supreme Court in Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061, where Mr. Justice McReynolds cited the title of the National Prohibition Act and the following language used in United States v. Yuginovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043: "It is a comprehensive statute intended to prevent the manufacture and sale of intoxicating liquors for beverage purposes"—and, after citing the provisions of title 2, section 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), prohibiting the manufacture, sale, etc., of intoxicating liquor, and of title 2, section 29 (section 10138½p), providing for penalties of fine and imprisonment for offenses against the act and of title 2, section 35, he said:

"The mere use of the word 'tax' in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. Child Labor Tax Case, ante [259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432]. When by its very nature the imposition is a penalty, it must be so regarded. Helwig v. United States, 188 U. S. 605, 613 [23 S. Ct. 427, 47 L. Ed. 614]. Evidence of crime (section 29) is essential to assessment under section 35. It lacks all the ordinary characteristics of a tax, whose primary function 'is to provide for the support of the government' and clearly involves the idea of punishment for infraction of the law—the definite function of a penalty. O'Sullivan v. Felix, 223 U. S. 318, 324 [34 S. Ct. 596, 58 L. Ed. 980]."

Lipke v. Lederer was followed in Regal Drug Corporation v. Wardell, 260 U. S. 386, 43 S. Ct. 152, 67 L. Ed. 318.

In Oregon v. Wood (D. C.) 268 F. 975, where the question of the removal of an indictment from a state court was in question, it was held that, in view of sections 35 and 37 of title 2 (Comp. St. Ann. Supp. 1923, §§ 10138½v, 10138½x), and other provisions of the act, the National Prohibition Act is a revenue act, as well as a prohibition act, and in Re Higgins (D. C.) 273 F. 832, the court followed the reasoning and conclusion of Oregon v. Wood. Those cases were decided prior to the opinion of the Supreme Court in Lipke v. Lederer. Since that decision, Judge Morton, of the District Court of Massachusetts, in Commonwealth v. Bogan, 285 F. 668, a removal case, said:

"In view of recent decisions of the Supreme Court (see Lipke v. Lederer [259 U. S. 557] 42 S. Ct. 549, 66 L. Ed. 1061), it seems clear that the National Prohibition Act is not a revenue law, and it follows that prohibition agents are not 'appointed or acting by authority of any revenue law of the United States.'"

It is concluded that the National Prohibition Act is not a revenue law, that term being applied only to laws having for their purpose the raising of revenue, and not to those in which the raising of revenue is incidental only to the main purpose of the law; that the main purpose of the act in question is, as clearly expressed in its title and in its entire text, the carrying into effect and enforcement of the Eighteenth Amendment; that section 35 is not a revenue provision of the act, its purpose being the imposition of penalties for criminal offenses and not the imposition of taxes. None of the other sections, in which provision is made concerning the application of existing tax laws to liquor subject to the purposes of the act, attempts to impose any tax not already imposed. As the term "revenue provisions of a law" must be construed necessarily in the same sense as the term "revenue law," there are no revenue provisions contained in the act within the meaning of the Act of June 8, 1875.

The defendant, as prohibition director for the state of Pennsylvania, appointed and acting under the provisions of the National Prohibition Act, was not, therefore, as set out in the indictment, an officer or agent appointed and acting under the authority of a revenue law, or revenue provision of a law, of the United States, and therefore cannot, for the acts alleged, be prosecuted for offenses arising under section 3169 of the Revised Statutes, as extended by the Act of February 8, 1875.

The demurrer is sustained.