UNITED STATES of America, Plaintiff,

v.

Michael A. MADISON, Defendant.

No. 87–CR–71–C.

United States District Court,
W.D. Wisconsin.

May 9, 1989.

Daniel P. Bach, Asst. U.S. Atty., Madison, Wis., for plaintiff.

Michael A. Madison, Oxford, Wis., pro se.

## ORDER

CRABB, Chief Judge.

This criminal case is before the court on defendant's motion to correct what he contends is an illegal sentence and to obtain the return of illegally collected money.

Defendant was sentenced in this court on November 10, 1987, on his plea of guilty to two counts of using a false social security number in violation of 42 U.S.C. § 408(g)(2). Part of his sentence included the imposition of two $50 criminal assessment penalties pursuant to 18 U.S.C. § 3013.[1] On January 17, 1989, defendant

---

1. Section 3013 provides as follows:
   § 3013. **Special assessment on convicted persons.**
   (a) The court shall assess on any person convicted of an offense against the United States—
   (1) in the case of a misdemeanor—
   (A) the amount of $25 if the defendant is an individual; and
   (B) the amount of $100 if the defendant is a person other than an individual; and

   (2) in the case of a felony—
   (A) the amount of $50 if the defendant is an individual; and
   (B) the amount of $200 if the defendant is a person other than an individual.
   (b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

moved for correction of his sentence, contending that the assessment penalties are invalid because § 3013 is a statute relating to the raising of revenue that did not originate in the House of Representatives as required under Article 1, Section 7 of the United States Constitution.

■ In a Report and Recommendation filed herein on February 28, 1989, the United States Magistrate noted that the sole authority for the defendant's motion was the panel opinion of the United States Court of Appeals for the Ninth Circuit in *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988), and that the court had under consideration the government's petition for rehearing en banc. The magistrate recommended a stay of the decision on defendant's motion by this court until a final decision has been rendered by the Ninth Circuit.

There is some merit to the magistrate's recommendation. It would be helpful to have the benefit of the Ninth Circuit's views on reconsideration of *Munoz–Flores* before deciding this case. However, the parties are entitled to a prompt resolution of this issue and it is not possible to predict when or if the Ninth Circuit opinion may be issued. In addition, it will be necessary to determine the issue independently whatever the outcome in the Ninth Circuit, because that court's opinions are not binding on this court.

Therefore, I will not adopt the magistrate's recommendation to stay a decision on the motion, but will proceed to consider the issues it raises.

Because I find that it is not clear that the bill enacting the statute at issue originated in the Senate and that in any event the criminal assessment provision is not revenue-raising legislation to which the origination clause applies, I conclude that § 3013 is constitutional and that the special assessment penalties imposed upon defendant are valid.

## OPINION

The origination clause requires that "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. 1, sec. 7. Its purpose is to grant the primary power over taxation to the chamber thought to be more closely tied to the popular will. 2 P. Kurland & R. Lerner, *The Founders' Constitution* 376 (1987).

The clause is rarely the basis for a constitutional attack on legislation. The United States Supreme Court has not entertained any origination clause challenges to legislation since 1914, and the Court has never invalidated legislation for congressional non-compliance with the clause. In fact, before *Munoz–Flores* was decided, no federal court of appeals had ever struck down legislation on this ground. The only court ever to do so was a district court in a case that never reached the Supreme Court because Congress mooted the issue by simply passing the same tax bill again in proper order. *Hubbard v. Lowe*, 226 F. 135 (S.D.N.Y.1915), *appeal dismissed*, 242 U.S. 654, 37 S.Ct. 12, 61 L.Ed. 547 (1917).

■ As the following discussion will reveal, I have doubts about the justiciability of this case and other challenges to legislation based on the origination clause that require judicial inquiry into the internal procedures of Congress and the legal effect of those procedures. If the question were an open one, I would hold that judicial consideration of such challenges is impossible "without expressing lack of the respect due coordinate branches of government." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). However, the question of the general justiciability of these cases is not open so far as the lower federal courts are concerned. It is implicit in the Supreme Court's adjudication of the late 18th and early 20th century cases that the Court does not view the issue as a non-justiciable political question. *See Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1914); *Millard v. Roberts*, 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090 (1906); *Twin City Bank v. Nebeker*, 167 U.S. 196, 17 S.Ct. 766, 42 L.Ed. 134 (1897); *United States v. Norton*, 91 U.S. 566, 23 L.Ed. 454 (1875). *See also Moore v.*

*U.S. House of Representatives,* 733 F.2d 946, 948 n. 3 & 953 (D.C.Cir.1984) ("Supreme Court has adjudicated several challenges to revenue acts under the Origination Clause, brought by private plaintiffs"). It is possible that the present Court would take a different view, but until it does the lower courts are not free to do so. It remains open, however, whether the courts are free to look behind the caption of a bill to determine the origin of that bill, or to overrule a Congressional determination that legislation is not revenue-related within the meaning of the origination clause.

In *Munoz–Flores,* the Court of Appeals for the Ninth Circuit conducted a detailed inquiry into procedural history of § 3013 and concluded that despite the fact that the statute was part of a House-originated bill, H.J.Res. 648, the statute's origin was the Senate and not the House of Representatives. The court recounted that history as follows:

> On May 1, 1984, in hearings on S.2423, the Victim of Crime Assistance Act of 1984, before the Senate Committee on the Judiciary, Senator John Heinz proposed a provision allowing for the collection of "penalty assessments" from convicted persons. *See [The Victims of Crime Assistance Act of 1984: Hearings on S.2423 Before the Senate Comm. on the Judiciary,* 98th Cong., 2d Sess. 21 (1984)]. On May 10, 1984, the Committee on the Judiciary ordered the bill reported, including the newly added section authorizing the collection of special assessments. *See* S.Rep. No. 497, 98th Cong. 2d Sess. 3 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News, at 3609. The Senate passed S.2423 on August 10, 1984. *See* 1984 U.S.Code Cong. & Admin.News 3607. This bill was never passed by the House. However, on October 4, 1984, the Senate added the text of the Victims of Crime Assistance Act of 1984, including the special assessment provision, to a joint resolution making continuing appropriations for the fis-

cal year 1985 (H.J.Res. 648). Thurmond Amendment No. 7043, 98th Cong., 2d Seses., 130 Cong.Rec. S13,520, S13,544 (daily ed. Oct. 4, 1984). Although H.J.Res. 648 had been approved by the House on September 28, 1984, as passed by the House the joint resolution contained no provision relating to special assessments. *See* Joint Explanatory Statement of the Committee of Conference, 1984 U.S.Code Cong. & Admin. News 3710, 3713–14. The provision establishing the special assessments ultimately became part of the Comprehensive Crime Control Act of 1984, itself forming one of many unrelated titles in H.J.Res. 648 as adopted by the House on October 10, 1984 pursuant to the conference agreement. *See id.* The Senate passed the modified version of H.J.Res. 648 on October 11, 1984, and the bill became law on October 12, 1984 (Pub.L. No. 98–473).

Although section 3013 ultimately passed both houses of Congress as a minor component of the continuing appropriations resolution for 1985, the Senate clearly initiated the special assessment legislation. The special assessment provision was introduced in the Senate Judiciary Committee, it was first passed by the Senate and was only adopted by the House on later repassage of H.J.Res. 648. Based on this reading of the legislative history, we hold that section 3013 originated in the Senate.

*Munoz–Flores,* 863 F.2d at 660–61.

The government contends that the court's summary of § 3013's procedural history is factually inaccurate because it fails to take into account events in the House in 1983. It alleges that legislation introduced in the House of Representative Rodino in June 1983, H.R.3498, the Victims of Crime Act of 1984, *see* 129 Cong.Rec. E3,332 (June 30, 1983), contained language essentially the same as that which became § 3013.[2] (The government does not sug-

---

**2.** The Rodino proposal read in relevant part as follows:

> SPECIAL COURT ASSESSMENT AMENDMENT

Sec. 402. (a) Chapter 201 of title 18 of the United States Code is amended by adding at the end the following:

gest that the Rodino-sponsored legislation was ever approved by the House and I can find no indication that it was.)

The Senate passed S.2423 with the Heinz amendment on August 10, 1984. According to comments by Representative Rodino in the Congressional Record, he began negotiations with the administration and with the leadership of the Senate Judiciary Committee shortly after passage of S.2423 to work out differences among his own Victims of Crime bill (H.R.3498), the administration's version of the same bill, and S.2423. 130 Cong.Rec. H12,084. On September 28, 1984, the House attached to the continuing appropriations bill, H.J.Res. 648, its version of President Reagan's Comprehensive Crime Control Act (without the Rodino-sponsored Victims of Crime Act) and passed the bill as amended. 36 Crim. Law Rptr. 2020. On October 2, 1984, the House passed H.R.5690, which included the compromise version of H.R.3498. 130 Cong. Rec. H12,084. On October 4, 1984, Senator Thurmond amended H.J.Res. 648 by adding provisions relating to victims of crime. According to Representative Rodino, Senator

Thurmond's addition was the negotiated compromise that the House had approved on October 2, 1984. Id.[3]

From this version of the legislative history, the government argues that this court should hold that § 3013 actually originated in the House, either because the final bill included the assessment concept sponsored originally in the House by Representative Rodino, or because it was the House that first approved the final compromise version of H.J.Res. 648.

Deciding this question requires resort to many different sources of legislative information, which in itself raises questions: whether it is proper for a court to look behind the designation of a bill as a House or Senate-originated bill, and if so, what kinds of reference materials may be consulted to determine the actual origination of a particular act or statute, and what standards govern the determination that Congress acted properly or not.

In the one case before *Munoz–Flores* that overturned legislation because it violated the origination clause, *Hubbard v.*

---

Sec. 3013. Special assessment on convicted persons.
   "(a) The court shall assess on any person convicted of an offense against the United States—
      "(1) the amount of $50 in the case of a felony; and
      "(2) the amount of $25 in the case of a misdemeanor.
   "(b) Such amount so assessed may be collected in the manner in which fines are collected in criminal cases."
H.R. 3498, 98th Cong. 1st Session (June 30, 1983). U.S. Department of Justice, Office of Justice Programs, Indexed Legislative History of the Victims of Crime Act of 1984, at 176.
   The "penalty assessment" amendment introduced by Senator Heinz in May 1984 read as follows:
PENALTY ASSESSMENT FEES
   Sec. 101. Whenever any person is convicted of an offense in any court of the United States, the court shall impose a penalty assessment fee on such persons in the amount of—
      (a) $25, if the defendant is an individual and the offense is a misdemeanor;
      (b) $50, if the defendant is an individual and the offense is a felony;
      (c) $100, if the defendant is a person other than an individual and the offense is a misdemeanor; and
      (d) $200, if the defendant is a person other than an individual and the offense is a felony.

S.2423, 98th Cong. 2d Session (August 10, 1984). 130 Cong.Rec. S10,542 (August 10, 1984).

**3.** Senator Thurmond's amendment contained the following relevant provision:
PENALTY ASSESSMENT
   Sec. 106. (a) Chapter 201 of title 18 of the United States Code is amended by adding at the end the following:
   "Sec. 3013. Special assessments on convicted persons.
   "(a) The court shall assess on any peson convicted of an offense against the United States—
      "(1) in the case of a misdemeanor—
      "(A) the amount of $25 if the defendant is an individual; and
      "(B) the amount of $100 if the defendant is a person other than an individual; and
      "(2) in the case of a felony—
      "(A) the amount of $50 if the defendant is an individual; and
      "(B) the amount of $200 if the defendant is a person other than an individual.
   "(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases."
   130 Cong.Rec. S13,544. As passed by both houses of Congress and signed by the president, H.J.Res. 648 contained language identical to that in the Thurmond amendment with the exception that "SEC. 106" became "Sec. 1405."

*Lowe,* 226 F. 135, the court rejected counsel's invitation to review the legislative history of the act, which imposed a tax on certain contracts for cotton futures. Although counsel tried to persuade the court to take notice of the fact that it was the House that had added a taxing provision to a Senate-originated bill that had nothing to do with taxes, the court held that it was not proper to consult the Congressional journals to contradict the evidence of the bill's enrollment.[4] *Id.* at 139, citing *Field v. Clark,* 143 U.S. 649, 672, 12 S.Ct. 495, 497, 36 L.Ed. 294 (1982). In *Field,* the Supreme Court had held that the "[r]espect due to coequal and independent departments requires the judicial department to act upon" the assurance of the legislative and executive departments that a particular law was passed by Congress, without examination of Congressional journals to determine whether a particular bill had passed each house in the precise form in which it was signed by the presiding officers of both houses and approved by the president. *Id.* In *Hubbard* the court determined the origin of the bill by looking at its legend, S.110, and its certification by the secretary of the Senate that it had originated in the Senate. *See also United States v. Rainey,* 232 U.S. 310, 317, 34 S.Ct. 429, 431, 58 L.Ed. 617 (1914) (refraining expressly from suggesting that after an act of Congress has been duly promulgated, a court may inquire in which house it originated for the purpose of determining its validity).

Final determination of the actual origination of § 3013 requires resolution of at least two questions of Congressional procedures. If, as the government asserts, and the similarity of wording indicates, the basis for § 3013 is the Rodino-sponsored legislation, H.R.3498, does this constitute "origination" in the House when that legislation was never approved by House membership? Alternatively, are the requirements of the origination clause met if the House is the first to approve a conference committee version of a revenue-raising bill?

4. "Enrollment" is the certification of the presiding officers, in the presence of their respective houses, that a bill has been properly enacted. 1

It seems unlikely that the mere origin of a concept in the House of Representatives is "origination" as the drafters of art. I, sec. 7 intended it, but I know of no definitive guidance on that point. The second question raises a much more substantial issue and reveals the possibility of a flaw in the Ninth Circuit's analysis of § 3013's legislative history. *See* 3 Deschler's Precedents of the House of Representatives, ch. 13, secs. 13 and 18.5 (U.S. Govt. Printing Office, 1977) (any possible infringement on House prerogative to originate revenue legislation is remedied by passage of bill identical to Senate bill; bill with House number on it will not be challenged on House floor for infringement of origination clause "notwithstanding the fact that a House revenue measure may have been substantially changed by Senate amendments").

■ The complexities of deciding the significance of various procedural steps taken by either house of Congress, and the court's lack of legal precedent for doing so, suggest strongly that the courts should avoid such inquiries. It is an intrusion into the internal affairs of Congress for a court to decide whether the first passage by the House of the final compromise version of H.J.Res. 648 did or did not remedy any origination clause concerns. Such an intrusion carries with it an implicit lack of respect for a coordinate branch of government. Questions about the actual origination of legislation or legislative concepts, or adoption of such legislation, and the manner in which defects in origination may be remedied, if at all, are political questions best left to the legislature to resolve.

The Court of Appeals for the Fifth Circuit made the same point in declining to attempt a definition of "revenue-raising legislation." *Texas Ass'n of Concerned Taxpayers, Inc. v. United States,* 772 F.2d 163, 166 (5th Cir.1985): "Judicial second-guessing of the meaning of the origination clause would also inherently express a 'lack of respect due [a] coordinate [branch] of

N. Singer, *Sutherland Statutory Construction,* Ch. 15, p. 610 (4th ed.)

government.' *Baker [v. Carr]*, 369 U.S. at 217 [82 S.Ct. at 710]."

There is no obvious need for judicial intrusion in origination clause questions. The "House is certainly aware of its constitutional prerogatives ..." *Texas Ass'n of Concerned Taxpayers*, 772 F.2d at 166. It has reliable mechanisms for protecting those prerogatives, of which the most effective is the simple option of refusing to approve any revenue-raising legislation that it does not originate. *See* other examples in 3 Deschler's Precedents, ch. 13, sec. 13 (House may choose to pass a House bill instead of a pending Senate bill; Senate bill may be returned to the Senate).

Origination clause challenges do not implicate the same concerns that led the Supreme Court to overturn the one-house legislative veto in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In that case, the Court was addressing the constitutionality of legislation that did not meet the requirements of presentment and bicameralism set out in art. 1, sec. 7, because it permitted a one-house veto of certain actions taken by administrative agencies. The Court held that the presentment and bicameralism requirements were designed to "protect the Executive Branch from Congress and to protect the whole people from improvident laws." *Id.* at 951, 103 S.Ct. at 2784. No similar concern is present here. The original clause is largely an anachronism; no one can argue seriously that the members of either chamber are more or less responsive to the popular will. And, in any event, so long as the House of Representatives retains the option of refusing to pass revenue-related legislation, the founders' intentions are preserved and the people are protected.

The issue in this case is unlike that in *Chadha* in another important respect. There, the challenge to the legislative procedure was "an issue of sheer lack of authority bounded by 'explicit, unambiguous' cornerstones," *Texas Ass'n of Concerned Taxpayers*, 772 F.2d at 166; it was not the complex and somewhat arcane question of congressional procedures at issue in the instant case.

■ My tentative conclusion is that no origination clause question is implicated by § 3013. Even if the statute is properly characterized as a revenue-raising measure, it appears to have originated in the House, because it was part of a bill bearing a House designation *and* because it was first approved in its final form by the House. I conclude further that the question need not be answered if § 3013 does not have revenue-raising as its primary purpose, and I turn next to that question.

In *Munoz–Flores*, 863 F.2d 654, the court found that § 3013 was primarily revenue-raising rather than punitive, as the government had argued it was. Examining the legislative history of S.2423, the court noted two statements in the Senate Committee report: 1) the purpose of imposing the nominal assessment fees was to generate needed income to offset the cost of the victims' assistance fund and 2) although substantial amounts would not be raised, the additional funds would constitute new income for the federal government. The court found it significant that Congress had failed to restrict the use of the funds assessed under § 3013; *id.* at 658–659, that the assessment might raise general federal revenue; and that Congress had failed to restrict the use of that revenue. *Id.* at 658. It rejected the government's arguments that the assessment was referred to in the legislative history as a "penalty assessment," that the assessment is imposed only upon convicted persons, and that other courts had found the provision punitive. The court found it persuasive that in the codified version of the statute the assessment is referred to as a "special" assessment and not a "penalty" assessment; the legislative history makes no reference to punishment as a purpose and, with one unpersuasive exception, *United States v. Ramos*, 624 F.Supp. 970 (S.D.N.Y.1985), the other courts that have considered the nature of the statute have not done so in the context of an origination clause challenge.

It remains true that no other court of appeals has addressed the nature of § 3013 as it relates to an origination clause chal-

lenge. Those courts that have considered the statute in other contexts are split on its characterization. The Third and Eighth Circuits have held the assessment nonpunitive: "As § 3013 is not a criminal statute, the rule of lenity does not require that we construe any ambiguity in its terms in favor of defendant." *United States v. Donaldson*, 797 F.2d 125, 127 (3d Cir.1986); *United States v. Dobbins*, 807 F.2d 130 (8th Cir.1986) (adopting reasoning of Third Circuit). However, in *United States v. Mayberry*, 774 F.2d 1018 (10th Cir.1985), the Tenth Circuit held that for the purposes of the Assimilative Crimes Act, the special assessment is a form of punishment. The Fourth Circuit reached the same conclusion in *United States v. Davis*, 845 F.2d 94, 97 n. 2 (5th Cir.1988). *See also United States v. Smith*, 818 F.2d 687 (9th Cir.1987) (holding that the special assessment is a punitive measure and because it is, defendants were not entitled to a separate jury trial before its imposition).

The punitive-nonpunitive distinction is not the only test for determining whether an act imposing a tax or fee is a revenue-raising bill covered by the origination clause. That clause comes into play only if the primary purpose of the provision *and* its related legislation have revenue-raising as their primary purpose. *See e.g., Twin City Bank v. Nebeker*, 167 U.S. 196, 17 S.Ct. 766, 42 L.Ed. 134 (taxing provisions added by the Senate to a house bill are not revenue-raising because they only further a non-revenue raising objective of the bill as a whole); *Millard v. Roberts*, 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090 (legislation providing for construction of railroad station in Washington, D.C. is not revenue-raising).

Although I believe it is not the proper task of the courts either to make an independent decision about the actual origination of a statute or to second-guess an implicit determination by Congress that a statute is not revenue-raising, I am satisfied that an objective review of the statute leads to only one conclusion: that the primary purpose of § 3013 is not the raising of revenue. As a part of the Victims of Crime Act of 1984, and of the Comprehensive Crime Control Act, the statute is only a subsidiary element of a multi-faceted plan designed to improve the administration of the criminal justice system and aid the victims of crime. The Victims of Crime Act of 1984 creates a fund that is made up primarily of the fines collected from persons convicted of offenses against the United States. From this fund the Attorney General is to make grants to eligible crime victim compensation programs operated by the states and to programs providing victim assistance, particularly to victims of sexual assault, spousal abuse, and child abuse. Additionally, the Victims of Crime Act provides for the forfeiture of money earned by any convicted person from any depiction of his crime in any media program or publication.

When Congress enacted the special assessment provision, it was aware that it would generate only small amounts of income. One representative of the Attorney General estimated the amount to be around $2 million. *Munoz-Flores*, 863 F.2d at 659 n. 5. Despite the statement in S.Rep. No. 497, 98th Cong., 2d Sess. 13–14 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3607, 3619–3620, that the amounts generated by the special assessment would constitute new income for the federal government, it seems obvious that the real purpose of the assessment is, as Congress says in the same paragraph, simply to generate needed income to offset the costs of the victim assistance funds created in the Victims of Crime Act. As such, the assessment's fund-raising aspect is subsidiary to the greater purposes of the programs created by the Act.

In recent decisions, two district courts have held that the Special Assessment is not a revenue-raising provision to which the origination clause applies. In *United States v. Hines*, 57 U.S.L.W. 2527, 1989 WL 16565 (S.D.N.Y. Feb. 22, 1989), the court's decision turned on its finding that the special assessment is a penalty provision, rather than a revenue-raising measure. The court found three aspects of the statute indicative of a Congressional intent to penalize lawbreakers: the assessments may be imposed only upon conviction of a

crime; the assessment is greater for serious crimes ($25 for misdemeanors, $50 for felonies); and the assessment is collected in the same manner as a fine. In *United States v. McDonough,* 706 F.Supp. 692 (D.Minn.1989), the court's examination of the purposes of the legislation led it to the conclusion that the statute was not enacted for the direct, stated purpose of raising money for the service of the government, and therefore was not a revenue-raising bill.

> A provision's purpose is determined by examining the content and legislative history of the provision and of the related legislation with which it is introduced. A provision of a bill that levies a tax does not transform the bill into one for raising revenue if the taxing provision is designed to further a non-revenue raising objective of the bill as a whole.

*Id.* 706 F.Supp. at 693.

I agree with the conclusion in *McDonough* that the taxing provision of § 3013 is intended only to further the non-revenue producing objectives of the Victims of Crime Act: to support state-created crime victim compensation and assistance programs. Although the possibility exists that the assessment might be used for general government revenues, the obviously limited applicability of the tax, which can be imposed only upon convicted persons, and the small amounts of revenue to be produced, make the possibility a remote one. Therefore, I conclude that § 3013 is not a revenue-raising bill and that its origination is irrelevant.

## ORDER

IT IS ORDERED that defendant's motion to correct his sentence and obtain the return of the money he paid pursuant to 18 U.S.C. § 3013 is DENIED.