925 F.2d 487
 288 U.S.App.D.C. 256
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
ALC COMMUNICATIONS CORPORATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
 No. 90-1041.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 8, 1991.
Rehearing and Rehearing En Banc Denied April 4, 1991.
 
 Before MIKVA, Chief Judge, and BUCKLEY and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on petition for review of an order of the Federal Communications Commission, and on the briefs filed by the parties and argument by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 The Federal Communications Commission (the "FCC" or "Commission") oversees several programs designed to advance the goal of universal telephone service. A Universal Service Fund subsidizes high-cost local exchange carriers ("LECs"), allowing them to provide affordable service, while the "Link Up America" and "lifeline" programs help low-income households with telephone installation and service charges. Funding for these subsidies comes from assessments on long-distance telephone companies known as "interexchange carriers" or "IXCs."
 
 
 5
 In this case, petitioner ALC Communications Corporation ("ALC") seeks review of a Commission order modifying the formula governing allocation of universal service assessments among long-distance carriers. ALC is the parent of Allnet Communications Services, Inc., an IXC subject to assessments under the new formula. ALC claims that the Commission acted arbitrarily, capriciously, and unjustly when it adopted the new funding formula, that the Commission unlawfully failed to involve a federal/state joint advisory board in its decision-making, and that the assessments are illegal taxes. We deny the petition.
 
 I.
 
 6
 In 1986, the FCC requested policy recommendations on the universal service programs from the Federal-State Joint Board (the "Joint Board"), an administrative and advisory body created by Congress in recognition of the interrelationship between interstate and intrastate telecommunications. See 47 U.S.C. Sec. 410(c) (1988). The Joint Board recommended funding the universal service programs through a charge assessed on IXCs in proportion to the number of "presubscribed" long-distance lines held by each company. As proposed by the Joint Board, this assessment would be levied only on major IXCs, defined as those who hold at least one percent of the nation's "1 +" long-distance lines or at least five percent of the 1 + lines in a given regional "study area." The charges would be calculated, collected, and disbursed by the National Exchange Carrier Association ("NECA"), an independent organization of LECs created by order of the FCC. The Commission subsequently approved this formula and the recommended effective date of April 1, 1989. See MTS and WATS Market Structure, 2 FCC Rcd 2953 (1987).
 
 
 7
 In November 1988, the Commission issued a Notice of Proposed Rulemaking, 4 FCC Rcd 2041 (1988) [hereinafter Notice ], reopening the universal service funding issue. The Notice set out information obtained from NECA indicating that "several very small IXCs would be billed for [universal service programs] under the current rules, while other medium-sized IXCs would not." 4 FCC Rcd at 2042. The Commission attributed this result to the existence of small, localized interexchange carriers who satisfied the study area threshold despite a low total number of presubscribed lines. It proposed eliminating the study area test and lowering the nationwide threshold from one percent of all presubscribed lines to .05 percent. These two steps would, in the FCC's view, address the inequity of excusing larger IXCs from a fee paid by smaller carriers, while spreading universal service assessments among roughly the same number of IXCs as under the earlier plan. Id. After a comment period, the Commission formally adopted its proposed .05% standard. See Amendment to Part 69 of the Commission's Rules Relating to the Assessment of Charges for the Universal Service Fund and Lifeline Assistance, 4 FCC Rcd 6134 (1989) [hereinafter Order ].
 
 II.
 
 8
 ALC contends that the Commission's choice of the .05% standard was "arbitrary and capricious" under the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) (1988), and that the resulting charges are unjust and unreasonably discriminatory, in violation of the Communications Act of 1934, 47 U.S.C. Sec. 202(a) (1988). The thrust of these arguments is that the Commission should have picked an even lower threshold that would spread the cost of universal service programs among a larger group of IXCs. While we do not consider the FCC's Order a model for reasoned decision-making, we conclude that it satisfies statutory requirements.
 
 
 9
 Eliminating the 5% per study area criterion ensured that small IXCs would not bear the cost of universal service programs, while reducing the nationwide threshold percentage from 1% to .05% extended the assessment to more mid-sized IXCs. Therefore, the Commission reasonably concluded that the .05% standard addressed fairness concerns surrounding the Joint Board's recommendation.
 
 
 10
 ALC points out that the Commission did not estimate the billing costs associated with various standards, and argues that the assessments recovered from small IXCs would be greater than the added billing costs of a lower percentage standard. While it would have been useful for the FCC to obtain from NECA an estimate of the administrative costs associated with various percentage standards, nothing in the record warrants disturbing the Commission's conclusion that the increased billing costs associated with lower thresholds would outweigh fairness concerns. Increasing the number of IXCs subject to assessments would reduce the average contribution of individual IXCs, without enlarging the fund. Hence, a standard lower than .05% would necessarily increase billing costs as a percentage of revenue, compared to the .05% level.
 
 
 11
 The record neither supports nor contradicts the Commission's assertion that assessing small IXCs would weaken the security of the universal service programs by increasing the risk of IXC default. The Commission did clearly set out its reasoning, though, relying on an assumption--that small IXCs are less likely to be reliable sources of universal program funds than large IXCs--within its area of expertise. See Order, 4 FCC Rcd at 6136-37. Thus, we approve the FCC's choice of a .05% standard.
 
 
 12
 ALC next challenges the Commission's exemption of Bell Operating Companies ("BOCs") from the universal service program assessments. BOCs are LECs that also provide interexchange service within "local access and transport areas" ("LATAs") and between certain closely spaced LATAs. By contrast, other "1 +" carriers provide solely interexchange service. Petitioner claims that the Joint Board's original funding formula included BOCs within the term "interexchange carrier"; therefore, the Commission's exclusion of BOCs from assessments constituted a change in policy unsupported by any statement of reasons. This argument fails for two reasons. First, the FCC has consistently taken the position that "interexchange carrier," as used in the funding formula developed by the Joint Board, excludes BOCs. See Order, 4 FCC Rcd at 6138 & n. 68. Neither plainly erroneous nor inconsistent with the universal service program guidelines, this agency interpretation of its own rules carries "controlling weight." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). Second, the Commission's Notice expressly stated that exchange carriers would not be affected by the proceedings now under review, 4 FCC Rcd at 2043, so any modification of Commission policy that affected BOCs would have been defective for want of notice. See United Steelworkers v. Marshall, 647 F.2d 1189, 1221 (D.C.Cir.1980), cert. denied, 453 U.S. 913 (1981).
 
 
 13
 ALC also argues that the Commission violated the terms of 47 U.S.C. Sec. 410(c) when it failed to refer the assessment modification proposal to the Federal-State Joint Board. That provision requires the FCC to refer rule-makings "regarding the jurisdictional separation of common carrier property and expenses between interstate and intrastate operations" to the Joint Board, and authorizes the FCC to refer other issues of overlapping federal and state concern. Jurisdictional separation is a procedure that allocates telephone equipment used for both intrastate and interstate service between state and federal jurisdictions for rate-making purposes. See MCI Telecommunications Corp. v. FCC, 750 F.2d 135, 137 (D.C.Cir.1984). Since no jurisdictional separation issues were involved in the Order, referral to the Joint Board was not mandatory. Thus, the FCC had statutory discretion to determine that the issues framed by the Notice were not of "sufficient magnitude to justify the initiation of a formal, and potentially time consuming, Joint Board process." Order, 4 FCC Rcd at 6137.
 
 
 14
 We do not address ALC's argument that the Order was "further decisional action" on the Joint Board's recommendation, making participation by members of the Joint Board mandatory under section 410(c), because it was not presented to the Commission. ALC's relevant comments in response to the Notice do not assert that the Notice continued the Joint Board's proceedings. Thus, the administrative exhaustion requirement of 47 U.S.C. Sec. 405(a), which precludes judicial review where a party "relies on a question of fact or law upon which the Commission ... has been afforded no opportunity to pass," has not been satisfied.
 
 
 15
 Lastly, ALC asserts that the universal service program assessments are a tax, not enacted in accordance with the requirements of the origination clause, U.S. Const. art. I, Sec. 7, cl. 1. We find no merit in this argument. The assessments at issue are merely transfers from IXCs to high-cost LECs and low-income telephone subscribers. They need not be authorized in a revenue bill originating in the House since "[t]here was no purpose ... to raise revenue to be applied in meeting the expenses and obligations of the Government." Millard v. Roberts, 202 U.S. 429, 436-37 (1906) (quoting Twin City Bank v. Nebeker, 167 U.S. 196, 203 (1987)). Universal service assessments fit comfortably within the range of special-purpose levies that are consistent with congressional authority to regulate commerce, see Brock v. Washington Metro. Area Transit Auth., 796 F.2d 481, 488 (D.C.Cir.1986) (citing cases), cert. denied, 481 U.S. 1013 (1987), and Congress has given the FCC a regulatory mandate sufficiently broad to authorize the assessments, see Rural Telephone Coalition v. FCC, 838 F.2d 1307, 1315 (D.C.Cir.1988).
 
 III.
 
 16
 For the foregoing reasons, the petition is denied. While the Commission could have spoken more plainly in substantiating its choice of a particular policy alternative over competing options, a reasoned decisional process is discernible.