**UNITED STATES of America, Plaintiff,**

v.

**Michael S. McDONOUGH, Defendant.**

**No. Cr. 4–88–137(1).**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 23, 1989.

Douglas R. Peterson, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Scott F. Tilsen, Minneapolis, Minn., for defendant.

## ORDER

DIANA E. MURPHY, District Judge.

Defendant Michael S. McDonough entered a guilty plea on January 30, 1989. McDonough has moved this court to declare the special assessment statute, 18 U.S.C. § 3013, unconstitutional.

Section 3013 imposes a charge of $25 to $200 on persons convicted of a federal offense. McDonough asserts that this statute is a revenue raising provision which was enacted in violation of the origination clause, U.S. Const. art. I, § 7, cl. 1.

The origination clause provides that "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." The government does not contend that § 3013 originated in the House of Representatives or that it was an amendment within the meaning of the clause. The contested issue is whether the special assessment statute was introduced in a revenue raising bill subject to the origination clause's requirements.

McDonough relies primarily on the reasoning used in *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988). The panel in *Munoz–Flores* noted that the origination clause applies only to bills designed to raise revenue and that it does not extend to bills that incidentally create revenue if they were enacted for other purposes. The court recognized one purpose of § 3013 was to raise funds for victim assistance programs. It noted that if the funds were confined to this purpose, the origination clause may not have come into play. Based on language in the Senate report characterizing the revenues as "new income"[1] and the lack of restrictions in § 3013 on how the funds could be used, however, it concluded that the primary pur-

---

1. The report notes that revenues raised by the special assessment provision "will constitute new income for the Federal government." S.Rep. No. 497, 98th Cong., 2d Sess. 13–14 (1984), *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182, 3607, 3619–20.

pose of § 3013 was to raise revenue, not to fund victim assistance programs. 863 F.2d at 658–60.

The government responds to the arguments adopted by McDonough. It asserts that the statute should not be viewed as a revenue raising provision simply because Congress contemplated that it might be used to raise revenue for general purposes. It contends that the purpose was to aid victims of crime and that the statute's potential for raising general revenues was only incidental.

■ A bill is one "for raising Revenue" under the origination clause only in limited circumstances. Revenue bills are those that "levy taxes, in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue." *Twin City Nat'l Bank v. Nebecker*, 167 U.S. 196, 202, 17 S.Ct. 766, 769, 42 L.Ed. 134 (1897). They are enacted for the direct, stated purpose of raising money for the service of the government. *United States v. Norton*, 91 U.S. 566, 569, 23 L.Ed. 454 (1875).

■ A provision's purpose is determined by examining the content and legislative history of the provision and of the related legislation with which it is introduced. A provision of a bill which levies a tax does not transform the bill into one for raising revenue if the taxing provision is designed to further a non-revenue raising objective of the bill as a whole. *Twin City Nat'l Bank*, 167 U.S. at 202, 17 S.Ct. at 768–69. Thus, the Supreme Court upheld taxing provisions added by the Senate to a House bill because they furthered the bill's pur-

pose of providing a national currency. *Id.* at 202–03, 17 S.Ct. at 769. Similarly, in *Millard v. Roberts*, 202 U.S. 429, 436–37, 26 S.Ct. 674–675, 50 L.Ed. 1090 (1906), the Court upheld taxing provisions against an origination clause challenge because they were part of legislation providing for the construction of a railway station in Washington, D.C.

■ The special assessment statute, 18 U.S.C. § 3013, was passed in a context similar to that of the taxing provisions at issue in *Twin City National Bank* and *Millard*. It was introduced as Title II of the Victims of Crime Assistance Act of 1984, S. 2423, 98th Cong., 2d Sess. (1984).[2] The Act established a fund to support state and federal victim compensation and assistance programs. Title I of the Act included a provision, codified at 42 U.S.C. § 10601, requiring all assessments collected under Title II (§ 3013) to be paid into a "Crime Victims Fund." Once $100 million was deposited in the fund, however, excess revenues were to be paid into the general fund of the Treasury.

The purpose of the Act was to assist victims of crime.[3] The special assessment provision was designed to further that purpose. The Senate report states that the provision's purpose was:

to generate needed income to offset the cost of the [victim assistance] programs authorized under S. 2423. Although substantial amounts will not result, these additional amounts will be helpful in financing the program and will constitute new income for the Federal government.

*Id.* at 13–14, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182, 3607, 3619–20.

---

**2.** The Act, in the form of S. 2423, was passed by the Senate Judiciary Committee, was approved by both houses in a joint resolution, and was signed by President Reagan as part of a package known as the Comprehensive Crime Control Act of 1984.

**3.** As the senate report states:

The purpose of S. 2423, the Victims of Crime Assistance Act of 1984, as reported by the Committee on the Judiciary, is to provide limited Federal funding to the States, with

minimal bureaucratic "strings attached", for direct compensation and service programs to assist victims of crime, including victims of Federal crime. In addition, it provides funds to improve Federal efforts which assist crime victims, and establishes a Federal Victim of Crime Advisory Committee. A Federal Victim Assistance Administrator in the Department of Justice will coordinate Federal efforts. S.Rep. No. 497, 98th Cong., 2d Sess. 1 (1984), *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182, 3607, 3607.

The Senate report and legislative history of the Victims of Crime Assistance Act of 1984, S. 2423, demonstrate that the special assessment statute, § 3013, was adopted primarily to assist victims of crime.[4]

McDonough's arguments do not contradict this conclusion. His reliance on the fact that the special assessment provision did not limit the use of the funds is misplaced. Title I of the Act limited the use of the revenues so no similar restriction was called for in Title II. The fact that the assessments could be used for general purposes once revenues in the Crime Victims Fund exceeded $100 million is not a controlling factor. *See United States v. Norton,* 91 U.S. 566, 567–68, 23 L.Ed. 454 (1875) (money-order act held not to be a revenue raising bill despite likelihood that it would raise monies for general governmental use).

The special assessment statute, 18 U.S.C. § 3013, is not a revenue raising bill for purposes of the origination clause.

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that defendant's motion to declare the special assessment statute, 18 U.S.C. § 3013, unconstitutional is denied.

---

**4.** This conclusion was reached earlier by the Eighth Circuit in a different context. In *United States v. Dobbins,* 807 F.2d 130, 131 (8th Cir. 1986), the court stated:

> The Court of Appeals for the Third Circuit ... held that the purpose of Congress in enacting section 3013 was to aid victims of crimes rather than to punish the offenders and that the rule of lenity requiring that any ambiguity in the terms of the statute be construed in favor of the defendant does not apply. *United States v. Donaldson,* 797 F.2d 125 (3d Cir. 1986).
>
> We find the *Donaldson* decision persuasive, and we adopt its holding.