**UNITED STATES of America**

**v.**

**Rodney GREENE.**

**Crim. No. 88–00358.**

United States District Court,
E.D. Pennsylvania.

April 5, 1989.

Michael M. Baylson, U.S. Atty. and Ewald Zittlau, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Rodney Greene, Oakdale, La., pro se.

Jeffrey Staniels, Defender Association of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On October 21, 1988, defendant Rodney Greene plead guilty to eight counts of bank fraud in violation of 18 U.S.C. §§ 1344 and 2, one count of possession of stolen mail in violation of 18 U.S.C. § 1708, and one count of uttering a forged United States Treasury check in violation of 18 U.S.C. § 510. On December 7, 1988, this Court sentenced defendant to seven years incarceration on the uttering a forged Treasury check charge and five years on the bank fraud charges, said sentences to run concurrently. In addition, as to the possession of stolen mail count, defendant was placed on probation for a period of five years. Finally, pursuant to 18 U.S.C. § 3013, a special assessment of $50.00 was imposed on each count to which defendant plead guilty, making the total assessment $500.00.

Pursuant to Fed.R.Crim.P. 35(a), defendant Greene has moved this Court to correct its sentence of December 7, 1988, asserting that the special assessments are invalid because the legislation authorizing these assessments originated in the United States Senate contrary to article I, § 7 of the Constitution. Defendant relies exclusively on the Ninth Circuit decision of *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988) which, after determining that the purpose of the special assessment statute was to raise revenue, held that the legislation violated article I, § 7, which requires that revenue bills originate in the House of Representatives.

Preliminarily, we note that the three United States District courts which have

addressed the issue, have rejected the reasoning of *Munoz–Flores* and upheld the constitutionality of 18 U.S.C. § 3013. *United States v. Michael McDonough,* 44 Cr.L.Rep. 2419, 706 F.Supp. 692 (D.Minn. 1989); *United States v. Hines,* 44 Cr.L. Rep. 2419, 1989 WL 16565 (S.D.N.Y. Feb. 22, 1989); *United States v. Ramos,* 624 F.Supp. 970, 973 (S.D.N.Y.1985). Of course, neither the Ninth Circuit nor the district courts cited *supra* bind this Court. However, for the reasons stated below, we reject the Ninth Circuit's reasoning as upersuasive and join our fellow district court judges in finding the special assessments statute constitutional. Accordingly, we shall deny defendant's Rule 35 motion.

Article I, § 7 of the Constitution, the origination clause, provides that "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." The government does not contend and there is no evidence to suggest either that 18 U.S.C. § 3013 originated in the House of Representatives or that it was an amendment within the meaning of the origination clause. Thus, the single contested issue is whether the special assessment statute is a revenue bill subject to the origination clause's restraints.

We note that the fact that a statute produces governmental income is not dispositive in determining whether it is a revenue bill subject to the origination clause's restraints. Numerous Supreme Court decisions have held that origination clause restraints do not extend to bills that incidentally create revenue if those bills were enacted for purposes other than revenue raising. *See, e.g., Millard v. Roberts,* 202 U.S. 429, 436, 26 S.Ct. 674, 675, 50 L.Ed. 1090 (1906); *Twin City National Bank v. Nebeker,* 167 U.S. 196, 202, 17 S.Ct. 766, 768–69, 42 L.Ed. 134 (1897); *United States v. Norton,* 91 U.S. 566, 569, 23 L.Ed. 454 (1876). Indeed, a provision of a bill which levies a tax does not transform the bill into one for raising revenue if the taxing provision is designed to further a non-revenue raising objective of the bill as a whole. *Twin City National Bank,* 167 U.S. at 202,

17 S.Ct. at 771. Thus, based upon this clear precedent, 18 U.S.C. § 3013 is subject to the origination clause if and only if it was enacted "for the direct and avowed [and primary] purpose of creating revenue or public funds for the service of the government." *Norton,* 91 U.S. at 569 *quoting United States v. Mayo,* 26 F.Cas. 1230 (C.C.D.Mass.1813).

Our interpretation of 18 U.S.C. § 3013 is guided by the Supreme Court's admonition that:

> A statute ... is to be construed, if such a construction is possible, to avoid raising doubts of its constitutionality.

*St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981). From our reading of the legislation and its history, we conclude that the primary purpose of the special assessments statute was to assist victims of crime. Moreover, we conclude that the statute's potential for raising general revenues for the government was incidental to its aforementioned primary purpose. Accordingly, we find that because the special assessments statute was not subject to the origination clause's constraints, it is constitutional.

To determine the purpose of the special assessment, we first turn to the language of the statute, itself. *Burlington Northern Railroad Company v. Oklahoma Tax Commission,* 481 U.S. 454, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987). Section 3013 provides:

> (a) The court shall assess on any person convicted of an offense against the United States
>
> > (1) in the case of a misdemeanor
> >
> > > (A) the amount of $25 if the defendant is an individual; and
> > >
> > > (B) the amount of $100 if the defendant is a person other than an individual; and
> >
> > (2) in the case of a felony
> >
> > > (A) the amount of $50 if the defendant is an individual; and
> > >
> > > (B) the amount of $200 if the defendant is a person other than an individual.

(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

(c) The obligation to pay an assessment ceases five years after the date of the judgment.

(d) For purposes of this section, an offense under section 13 of this title is an offense against the United States.

On its face, the statute provides little if any insight into its underlying purpose. The fact that the statute creates two levels of assessment based on the gravity of the offense—$25 for misdemeanors and $50 for felonies, might suggest that the assessment is analogous to a criminal fine, and thus punitive in nature. *See United States v. Ramos*, 624 F.Supp. at 972; *United States v. Hines, supra*. Moreover, subsection c of the statute explicitly provides that assessments are to be collected in the same manner as fines are collected in criminal cases. At least one Circuit Court has concluded, based on these factors, that § 3013's primary purpose was to punish criminals. *See United States v. Mayberry*, 774 F.2d 1018, 1021 (10th Cir.1985). However, because we find that the language of the statute is not dispositive, we turn to the legislative history to infer Congress' intent. *See Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

The history of the special assessments statute, 18 U.S.C. § 3013 is a complex one. *See generally The Crime Control and Fine Enforcement Acts of 1984: A Synopsis*, Federal Judicial Center (1985). The special assessment statute, 18 U.S.C. § 3013, was introduced as Title II of the Victims of Crime Assistance Act of 1984, S. 2423, 98th Cong., 2d Sess. (1984), and was eventually signed into law as part of a legislative package known as the Comprehensive Crime Control Act of 1984. Title II established a fund to support state and federal victim compensation and assistance programs. Title I of the Act included a provision, codified at 42 U.S.C. § 10601, requiring all assessments collected under Title II of the Act to be paid into a "Crime Victim Fund."

The overall purpose of the Victims of Crime Assistance Act was provided by the accompanying report of the Senate Committee on the Judiciary:

The purpose of S. 2423, the Victims of Crime Assistance Act, as reported by the Committee on the Judiciary, is to provide limited Federal funding to the States, with minimal bureaucratic "strings attached," for direct compensation and service programs to assist victims of crime, including victims of Federal crime. In addition, it provides funds to improve Federal efforts which assist crime victims, and establishes a Federal Victim of Crime Advisory Committee. A Federal Victim Assistance Administrator in the Department of Justice will coordinate Federal efforts.

S.Rep. No. 497, 98th Cong., 2d Sess. 1 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3607. The special assessment provision, itself, was designed to further this purpose. The Senate Report states:

The purpose of imposing nominal assessment fees is to generate needed income to offset the cost of the [victims' assistance fund] authorized under S. 2423. Although substantial amounts will not result, these additional amounts will be helpful in financing the program and will constitute new income for the Federal government.

S.Rep. No. 497, *supra*, at 13–14, 1984 U.S. Code Cong. & Admin.News, at 3619–20. We find the legislative intent to be clear, to wit, to use the special assessment to defray, in part, the cost of a criminal victim assistance program.

The United States Court of Appeals for the Third Circuit, in *United States v. Donaldson*, 797 F.2d 125 (3d Cir.1986) reached the same conclusion. Judge Adams, writing for the Court, stated:

Congress enacted 18 U.S.C. § 3013, in order to authorize the imposition of a nominal assessment on defendants convicted of offenses against the United States ... Congress' purpose in enacting § 3013 was not to punish criminal defendants but rather was to raise revenue to

support state crime victim compensation programs.

797 F.2d at 126–27. *Accord United States v. Dobbins,* 807 F.2d 130, 131 (8th Cir. 1986). *But cf United States v. Mayberry,* 774 F.2d at 1021 (holding that primary purpose of § 3013 was punitive).

This Court, of course, follows the Third Circuit's holding in *Donaldson,* and concludes that the primary purpose of 18 U.S. C. § 3013 was to assist victims of crime. We note, however, that for purposes of determining whether the special assessment statute is subject to the provisions of the origination clause, it matters not whether its primary purpose was to assist victims or crime or to punish criminals. In either case, because the bill was enacted for a purpose other than revenue raising, the fact that the legislation incidentally creates revenue does not subject it to the provisions of the origination clause. *See United States v. Norton,* 91 U.S. at 567–68 (money-order act held not to be a revenue raising bill despite likelihood that it would raise monies for general governmental use); *Twin City National Bank v. Nebecker,* 167 U.S. at 202, 17 S.Ct. at 768–69 (taxing provision originated in Senate constitutional because it furthered bill's purpose of providing a national currency); *Millard v. Roberts,* 202 U.S. at 436–37, 26 S.Ct. at 675 (taxing provision originated in Senate constitutional because it furthered bill's purpose of providing for construction of railway station in Washington, D.C.).

We conclude that the special assessment statute, 18 U.S.C. § 3013, is not a revenue raising bill for purposes of the origination clause. Therefore, because the statute is constitutional, defendant Rodney Greene's motion to correct sentence will be denied.