**UNITED STATES of America**

v.

**James E. CONNER.**

**No. C–CR–87–42.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 10, 1989.

H. Thomas Church, Asst. U.S. Atty., Charlotte, N.C., for plaintiff.

James E. Connor, pro se.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's Motion to Correct an Illegal Sentence, filed March 8, 1989, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure.

On August 7, 1987, Defendant pleaded guilty to participating in a cocaine conspiracy as charged in Count One of the Bill of Indictment. On October 14, 1987, this Court sentenced Defendant to a term of imprisonment of seven years. The Court also ordered Defendant to pay a special assessment of fifty dollars, pursuant to section 3013 of Title 18 of the United States Code.[1]

In the Motion now pending before the Court, Defendant challenges the constitutionality of the special assessment portion of the sentence imposed by this Court. In support of his challenge, Defendant contends that because the legislation establishing the special assessment provision ("section 3013" or "special assessment provision") is a revenue bill that originated in the United States Senate, the legislation violates article I, section 7 of the United States Constitution ("the Origination Clause"). Defendant relies primarily on the recent decision of the United States Court of Appeals for the Ninth Circuit in *United States v. Munoz–Flores. See United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988).

On May 16, 1989, the Government filed the Government's Answer to Defendant's Motion to Correct an Illegal Sentence and a Memorandum in Support. In opposing Defendant's Motion, the Government contends, first, that section 3013 is not a revenue bill within the meaning of the Origination Clause. The Government contends, second, that the legislative history of section 3013 reveals that the special assessment provision originated in the House of Representatives.

In *United States v. Munoz–Flores,* the Ninth Circuit found the special assessment

---

1. Section 3013 provides in pertinent part:
   (a) The court shall assess on any person convicted of an offense against the United States—
   (1) in the case of a misdemeanor—
   (A) *the amount of $25 if the defendant is an individual;* and
   (B) the amount of $100 if the defendant is a person other than an individual; and
   (2) in the case of a felony—
   (A) *the amount of $50 if the defendant is an individual;* and
   (B) the amount of $200 if the defendant is a person other than an individual.
   (b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.
   18 U.S.C. § 3013 (Supp. V 1987).

to be unconstitutional. *Munoz–Flores*, 863 F.2d at 661–62. The Ninth Circuit in *Munoz–Flores* acknowledged that the Origination Clause applies only to bills that raise revenue. *Id.* at 657. The *Munoz–Flores* court recognized, further, that the Origination Clause's requirement that revenue-raising bills originate in the House of Representatives does not apply to bills that incidentally create revenue if Congress enacted those bills for purposes other than to raise revenue. *Id.* at 657–58. The Ninth Circuit concluded, however, that Congress' primary purpose in enacting the special assessment provision of section 3013 was to raise revenue. *Id.* at 660. The Ninth Circuit found also that section 3013 originated in the Senate and that the Senate did not amend any revenue-raising bill initiated in the House of Representatives. *Id.* at 660–61. The *Munoz–Flores* court concluded, therefore, that section 3013 violated the Origination Clause and was thus unconstitutional.

Since the Ninth Circuit's decision in *Munoz–Flores*, several district courts have rejected defendants' constitutional challenges of the special assessment based upon the Ninth Circuit's decision in *Munoz–Flores*. *See United States v. Michaels*, 706 F.Supp. 699 (D.Minn.1989); *United States v. McDonough*, 706 F.Supp. 692 (D.Minn.1989); *United States v. Hines*, No. 88–739, slip op., 1989 WL 16565 (S.D.N.Y. Feb. 11, 1989); *United States v. Greene*, 709 F.Supp. 636 (E.D.Penn.1989). The district courts essentially have disagreed with the Ninth Circuit's conclusion that Congress enacted section 3013 to raise revenue. *See Michaels*, 706 F.Supp. at 702 (finding that Congress enacted § 3013 as integral part of scheme to aid victims of crime, rather than as means of generating general federal revenue); *McDonough*, 706 F.Supp. at 694 (finding that Congress enacted § 3013 to promote assistance to victims of crime); *Hines*, No. 88–739, slip op. at 6–7 (finding that Congress enacted special assessment to be penalty against those convicted of crimes); *Greene*, 709 F.Supp. at 638–39 (finding that Congress enacted § 3013 to defray cost of criminal victim assistance program and to punish defendants); *see*

*also United States v. Ramos*, 624 F.Supp. 970, 973 (S.D.N.Y.1985) (although decided before *Munoz–Flores*, court found that Congress enacted special assessment to punish criminals). Neither the Ninth Circuit's decision in *Munoz–Flores* nor the district court decisions, however, are binding on this Court. The Court, therefore, will consider the constitutionality of the special assessment provision.

■ The United States Supreme Court has held that an act of Congress is presumed to be constitutional and that the burden of establishing an act's unconstitutionality rests with the party challenging the legislative act. *See Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960) (in considering Social Security Act, Supreme Court acknowledged existence of presumption favoring constitutionality of congressional acts); *Brown v. Maryland*, 25 U.S. (12 Wheat) 419, 436, 6 L.Ed. 678 (1827) (noting presumption of constitutionality favors every legislative act and burden of proof rests on person denying act's constitutionality); *see also Moon v. Freeman*, 379 F.2d 382, 391 (9th Cir.1967). In considering the constitutionality of an act of Congress, the Supreme Court has declared also that "[a] statute ... is to be construed, if such a construction is fairly possible, to avoid raising doubts of its constitutionality." *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *accord Nestor*, 363 U.S. at 617, 80 S.Ct. at 1376 (stating that "[T]he presumption of constitutionality with which this enactment, like any other, comes to us forbids us lightly to choose that reading of the statute's setting which will invalidate it over that which will save it").

■ The Origination Clause provides that "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7. The Supreme Court has defined the phrase "bills for raising revenue" as bills that "levy taxes, in the strict sense of the word, and are not bills for

other purposes which may incidentally create revenue." *Twin City Bank v. Nebeker*, 167 U.S. 196, 202, 17 S.Ct. 766, 769, 42 L.Ed. 134 (1897); *accord United States v. Norton*, 91 U.S. 566, 569, 23 L.Ed. 454 (1875). The Supreme Court has recognized, thus, that bills for raising revenue are bills enacted for the direct, stated purpose of raising revenue and public funds for the service of the government. *Norton*, 91 U.S. at 569, 23 L.Ed. 454. The requirement that a bill for raising revenue originate in the House of Representatives does not apply to a bill that Congress enacted for purposes other than to raise revenue even though the bill incidentally creates revenue. *See, e.g., Millard v. Roberts*, 202 U.S. 429, 436–37, 26 S.Ct. 674, 675, 50 L.Ed. 1090 (1906) (holding Act of Congress imposing tax as constitutional, non-revenue raising act because imposition of tax merely was means of effecting overall purpose of act); *Twin City Bank*, 167 U.S. at 202, 17 S.Ct. at 768 (same). The Supreme Court has acknowledged also that a bill containing a provision that levies a tax is not a bill for raising revenue if Congress designed the taxing provision to further a non-revenue raising object of the bill as a whole. *Twin City Bank*, 167 U.S. at 202, 17 S.Ct. at 768.

Because section 3013 requires persons convicted of crimes to pay special assessments, there can be little doubt that the imposition of special assessments pursuant to section 3013 raises revenue. The question for the Court, however, is whether Congress enacted the special assessment provision for a non-revenue raising purpose, which enactment incidentally raised revenue. *See Munoz–Flores*, 863 F.2d at 658 (stating issue as whether "special assessment statute [was] enacted for the direct and avowed purpose of creating revenue or public funds for the service of the government"). The Court, consequently, must consider Congress' purpose in enacting the special assessment provision.

In attempting to ascertain Congress' purpose in enacting the special assessment provision, the Court first must consider the explicit language of section 3013 itself. *See Burlington N.R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 107 S.Ct. 1855, 1859–60, 95 L.Ed.2d 404 (1987) (noting that in attempting to ascertain purpose of statute, courts first should consider language of statute). After carefully scrutinizing the language of the statute, the Court believes that the statutory language fails to reveal the purpose of the special assessment. *See* 18 U.S.C. § 3013 (Supp. V 1987); *supra*, note 1 (citing text of § 3013). The Court, however, feels that several points, which other courts have noted, are worthy of mention. First, because section 3013(b) provides that special assessments are to be collected in the same manner as criminal fines, the statutory language suggests that the special assessment is not a tax in the strict sense of the word. *See* 18 U.S.C. § 3013(b) (Supp. V 1987); *see also Michaels*, 706 F.Supp. at 701 n. 3; *Hines*, No. 88–739, slip op. at 2; *Greene*, 709 F.Supp. at 638. Second, because section 3013 creates two different levels of assessment based on the gravity of the offense, the statutory language of section 3013 suggests that the special assessment is a penalty, analogous to a criminal fine, and therefore, punitive. *See* 18 U.S.C. § 3013(a) (Supp. V 1987); *see also Hines*, No. 88–739, slip op. at 2; *Greene*, 709 F.Supp. at 638; *Ramos*, 624 F.Supp. at 973. And, third, because courts can impose a special assessment only on those convicted of a crime, the special assessment is a penalty and punitive in nature. *See Hines*, No. 88–739, slip op. at 5 (in rejecting Ninth Circuit's finding that special assessment was tax, court correctly recognized special status of person assessed under § 3013); *Ramos* 624 F.Supp. at 973 (noting that special assessment is not tax, but consequence of being convicted of crime).

Because the Court concludes that the explicit statutory language provides the Court with little guidance in ascertaining Congress' intent in enacting section 3013, the Court next must consider the legislative history of section 3013. *See Burlington N.R.R.*, 107 S.Ct. at 1859–60 (noting that when statutory language is ambiguous in helping court to determine statute's purpose, court then should consider legislative

history). Section 3013, which provides for the special assessment, was introduced as part of Chapter XIV of Title II of the Victims of Crime Act of 1984 ("the Act"). Victims of Crime Act of 1984, Pub.L. No. 98–473, 98 Stat. 2170, 2174 (codified as amended at 18 U.S.C. § 3013 (Supp. V 1987)). Section 3013, however, ultimately was incorporated into legislation known as the Comprehensive Crime Control Act of 1984. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837. Title II of the Act also established the Crime Victims Fund to support state and federal victim compensation and assistance programs. Victims of Crime Act of 1984, Pub.L. No. 98–473, 98 Stat. 2170, 2170 (codified as amended at 42 U.S.C. § 10601 (Supp. IV 1986)). Under the Act, criminal fines, special assessments collected under section 3013, and forfeited bonds were some of the various sources of funing for the Crime Victims Fund. *Id.*, 98 Stat. at 2171.

The overall purpose of the Act was to assist victims of crime. S.Rep. No. 497, 98th Cong.2d Sess. 1 (1984), *reprinted in* 1984 *U.S.Code Cong. & Admin.News*, 3182, 3607; *see McDonough*, 706 F.Supp. at 694; *Michaels*, 706 F.Supp. at 701–02; *Greene*, 709 F.Supp. at 638. In its report, the Senate Committee on the Judiciary stated that:

> The purpose of S. 2423, the Victims of Crime Assistance Act of 1984, ... is to provide limited Federal funding to the States, with minimal bureaucratic "strings attached", for direct compensation and service programs to assist victims of crime, including victims of Federal crime. In addition, it provides funds to improve Federal efforts which assist crime victims....

S.Rep. No. 497, *supra* at 1, *reprinted in* 1984 *U.S.Code Cong. & Admin.News*, at 3607 (hereafter textually referred to as "the Senate Report"). Congress designed the special assessment provision to further the overall purpose of the Act. *McDonough*, 706 F.Supp. at 694; *Michaels*, 706 F.Supp. at 701–02; *Greene*, 709 F.Supp. at 638. The Senate Report provides that the purpose of the special assessment provision

was "to generate needed income to offset the cost of the [Crime Victims Fund] authorized under S. 2423." S.Rep. No. 497, *supra*, at 13, *reprinted in* 1984 *U.S.Code Cong. & Admin.News*, at 3619. The Senate Report acknowledges also that "[a]lthough substantial amounts will not result, these additional amounts will be helpful in financing the program and will constitute new income for the Federal government." *Id.* at 13–14, *reprinted in* 1984 *U.S.Code Cong. & Admin.News*, at 3619–20.

■ From this review of the legislative history, the Court concludes that the special assessment provision in section 3013 was not a bill for raising revenue. The Court believes, first, that Congress did not establish the special assessment provision to raise revenue or public funds for the general support of the government. The Court believes, instead, that Congress enacted section 3013 to promote the overall purpose of the Act. *See McDonough*, 706 F.Supp. at 694; *Michaels*, 706 F.Supp. at 701; *Greene*, 709 F.Supp. at 638. The special assessment provision of section 3013 was part of a larger legislative scheme to aid the victims of crime. *See McDonough*, 706 F.Supp. at 694; *Michaels*, 706 F.Supp. at 702. The Court believes also that the Senate Report clearly shows that section 3013 merely was an attempt by Congress to defray the cost of the Crime Victims Fund and associated programs established under the Act. *See* S.Rep. No. 497, at 13–14, *reprinted in* 1984 U.S.Code Cong. & Admin.News, at 3619–20; *see also Greene*, 709 F.Supp. at 638. The potential that the special assessment provision may raise minimal amounts of revenue is merely incidental to the primary purpose of Title II to assist the victims of crime.

The Court believes, second, that if Congress wanted to use the special assessment provision to raise revenue, Congress would have provided for the imposition of a larger special assessment to provide for more than minimal amounts of revenue. *See* S.Rep. No. 497, *supra*, at 13–14, *reprinted in* 1984 *U.S.Code Cong. & Admin.News*, at 3619–20 (acknowledging that imposition of

special assessment will not raise substantial amount of revenue. The Court believes, further, that because Congress earmarked the funds generated by the imposition of the special assessment for the Crime Victims Fund, the revenue incidentally raised by the imposition of the special assessment is not for the general support of the government. *See id.*, at 5, *reprinted in* 1984 U.S.Code Cong. & Admin.News, at 3611 (clearly showing that Congress intended imposition of criminal fines and special assessments to be source of funding for Crime Victims Fund); *see also Michaels*, 706 F.Supp. at 701 (recognizing that imposition of special assessments would be source of funding for Crime Victims Fund).

For both of these reasons, the Court concludes that Congress did not enact the special assessment provision of section 3013 to raise revenue.

The Court recognizes that the Act provides a ceiling of $100 million of deposits into the Crime Victims Fund during any fiscal year. Victims of Crime Act of 1984, Pub.L. No. 98–473, 98 Stat. 2170, 2171; *see* S.Rep. No. 497, *supra*, at 5, *reprinted in* U.S.Code Cong. & Admin.News at 3611. The Senate Committee on the Judiciary, however, believed that deposits into the Crime Victims Fund only possibly could reach the $100 million ceiling. *See* S.Rep. No. 497, *supra*, at 21, *reprinted in* U.S. Code Cong. & Admin.News at 3627 (noting that deposits into Crime Victims Fund "could conceivably range up to" $100 million ceiling does not transform the special assessment provision of section 3013 into a bill for raising revenue). *See McDonough*, 706 F.Supp. at 695 (noting that ceiling on Crime Victims Fund is not controlling factor in considering whether Act was bill for raising revenue); *see also United States v. Norton*, 91 U.S. 566, 567–68, 23 L.Ed. 454 (1875) (holding that despite possibility that money-order act might raise money for general governmental use, money-order act was not bill for raising revenue).

The Court recognizes also that the United States Court of Appeals for the Fourth Circuit in *United States v. King* found that the special assessment is punitive in nature. *United States v. King*, 824 F.2d 313, 316 (4th Cir.1987). The Fourth Circuit was considering the nature of the special assessment, however, in the context of whether a district court could impose a special assessment on a defendant convicted of an offense under Assimilative Crimes Act when the state statute failed to provide for a similar assessment. *Id.* at 314. This Court, however, believes that because the issue confronting the Fourth Circuit in *King* involving the Assimilative Crimes Act differed from the issue before this Court involving the constitutionality of the enactment of the special assessment, the Fourth Circuit's finding in *King* is not controlling. Even if the Fourth Circuit's finding in *King* were controlling, however, the Court would have to conclude that Congress did not enact the special assessment provision to raise revenue, but to punish convicted defendants. The Court, consequently, would still conclude that even if the special assessment provision of section 3013 might raise revenue, the raising of revenue would be incidental to its primary purpose of punishing convicted defendants.

Because the Court has concluded that any revenue raising resulting from the imposition of the special assessment is only incidental to Congress' primary purpose in enacting section 3013 to assist the victims of crime, the Court does not need to consider whether the legislation containing the special assessment originated in the House of Representatives. The Court will deny Defendant's Motion to Correct an Illegal Sentence on the ground that Congress did not enact the special assessment provision to raise revenue for the general support of the government.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion to Correct an Illegal Sentence be, and hereby is, DENIED.