UNITED STATES of America, Plaintiff,

v.

**James Frank VINES, Defendant.**

**Crim. No. 87–00017–BH.**

United States District Court,
S.D. Alabama, S.D.

Aug. 16, 1989.

J.B. Sessions, III, U.S. Atty., Donna Roberts, Asst. U.S. Atty., Mobile, Ala., for U.S.

Robert Clark, and John Tyson, Sr., Mobile, Ala., for defendant.

### MEMORANDUM OPINION AND ORDER

HAND, Senior District Judge.

This cause comes before the Court on Defendant's Motion to Correct an Illegal

Sentence, to wit, to vacate the monetary special assessment, filed May 19, 1989, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure.

Defendant was found guilty on seventeen counts by a jury, and was sentenced on June 24, 1987, to three years on one count (count 20), five years probation on the remaining counts, to begin after his release, and $850.00 special assessment pursuant to 18 U.S.C. § 3013.[1]

Defendant in said motion asserts the special assessment is invalid because the legislation authorizing this assessment originated in the United States Senate contrary to article I, § 7 of the Constitution.[2] Defendant relies exclusively on the Ninth Circuit Court of Appeals opinion in *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir. 1989), which held the special assessment statute arose in the Senate and had the primary purpose to raise revenue, and therefore, the legislation violated article I, § 7, of the Constitution, which mandates that revenue bills originate in the House of Representatives.

Preliminarily, we note there are no cases in the Eleventh Circuit addressing this issue; therefore, this Court is not bound by Circuit precedent as to the result to be reached in this case.[3]

The test to be used in analyzing this question must be drawn from the Origination Clause. The Ninth Circuit in *Munoz–Flores*, adopted the following three part analysis from the language of the Origination Clause:

> First, [the court must determine] whether the statute falls within the class of revenue raising bills covered by the clause. If the bill is one that raises revenue within the meaning of art. I, § 7, the court must next determine if the bill originated in the House, as required by the clause. Finally, the court must examine whether the Senate's participation in the legislative process can be construed as an amendment permissible under the clause.

*Munoz–Flores*, 863 F.2d at 657.

In making this determination the Court must presume that an act of Congress is constitutional and a party challenging that act has the burden of establishing that act's unconstitutionality. *See Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435, 1448 (1960). This presumption arises in favor of every legislative act and a person who would deny the act's constitutionality must bear the burden of proof. *See Brown v. Maryland*, 25 U.S. (12 Wheat) 419, 436, 6 L.Ed. 678, 685 (1827).

---

**1.** § 3013 provides in pertinent part:
(a) The court shall assess on any person convicted of an offense against the United States—
(1) in the case of a misdemeanor—
(A) the amount of $25 if the defendant is an individual; and
(B) the amount of $100 if the defendant is a person other than an individual; and
(2) in the case of a felony—
(A) the amount of $50 if the defendant is an individual; and
(B) the amount of $200 if the defendant is a person other than an individual.
(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases. 18 U.S.C. § 3013 (Supp.V 1987).

**2.** That section of the Constitution, referred to as the origination clause, provides that, "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."

**3.** This Court notes that the Ninth Circuit stands alone as the only court to strike the special assessment statute as unconstitutional as a vio-

lation of the Origination Clause. The following courts have directly addressed the issue, yet held the statute constitutional. *See United States v. Michaels*, 706 F.Supp. 699 (D.Minn. 1989); *United States v. McDonough*, 706 F.Supp. 692 (D.Minn.1989); *United States v. Hines*, 1989 WL 16565 1989 U.S. Dist. LEXIS 1681, 44 Cr.L. Rep. 2419; *United States v. Conner*, 715 F.Supp. 1327 (W.D.N.C.1989); *United States v. Greene*, 709 F.Supp. 636 (E.D.Penn.1989); *United States v. Ramos*, 624 F.Supp. 970 (S.D.N.Y.1985). This Court further notes that a number of courts, while not addressing the special assessment clause under an origination clause analysis, have found the primary purpose of the special assessments clause to be penal in nature. *See United States v. Mayberry*, 774 F.2d 1018 (10th Cir.1985); *United States v. Davis*, 845 F.2d 94, 97 n. 2 (5th Cir.1988); *United States v. King*, 824 F.2d 313, 317 (4th Cir.1987); *United States v. Smith*, 818 F.2d 687 (9th Cir.1987) *distinguished* in *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988).

The Supreme Court has admonished all courts to be guided by the proposition that "[a] statute ... is to be construed, if such a construction is possible, to avoid raising doubts of its constitutionality." *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981). This Court notes that we are forbidden to "lightly ... choose that reading of the statute which will invalidate it over that which will save it." *Flemming,* 363 U.S. at 617, 80 S.Ct. at 1376, 4 L.Ed.2d at 1448.

We note the fact that even though a statute produces income which the government can use, this fact alone is not dispositive of the issue of whether a statute is a "bill for raising revenue" as prohibited by the Origination Clause. *Millard v. Roberts,* 202 U.S. 429, 436–37, 26 S.Ct. 674, 675–76, 50 L.Ed. 1090 (1906). The Supreme Court has long ago defined the phrase "bills for raising revenue" as bills that "levy taxes, in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue". *United States v. Norton,* 91 U.S. 566, 569, 23 L.Ed. 454 (1875). The Supreme Court has further acknowledged that a bill containing a provision that levies a tax is not a bill for raising revenue if Congress designed the taxing provision to further a non-revenue raising object of the bill as a whole. *See Twin City Bank v. Nebeker,* 167 U.S. 196, 202, 17 S.Ct. 766, 768–69, 42 L.Ed. 134 (1897).

These precedents mandate that this Court examine the special assessment statute to determine the purposes Congress had in passing such a bill, and to determine whether these purposes cause the statute to run afoul of the Origination Clause because the statute is a "bill for raising revenue". The determinative question is: was the statute passed "for the direct avowed purpose of creating revenue or public funds for the service of the government"? *Munoz–Flores,* 863 F.2d at 958 (quoting *Norton,* 91 U.S. at 569). That is to say, did Congress have a non-revenue raising purpose in mind when enacting the special assessment statute, which incidentally raised revenue? *United States v. Conner,* 715 F.Supp. 1327.

It is beyond argument that § 3013, by requiring all persons or non-persons convicted of either a misdemeanor or a felony to pay a special assessment, raises revenue. The statute raises funds for government use that previously did not exist in the government treasury. Furthermore, the special assessment frees funds that would otherwise have to be appropriated from the general funds for the special Crime Victims Fund. In either case, § 3013 clearly raises revenue as this Court understands the meaning of revenue.

Therefore, upon first inspection of the special assessment statute, this Court was of the opinion the Ninth Circuit in *Munoz–Flores* had correctly found the statute to violate the Origination Clause of the Constitution. However, upon closer examination of all relevant cases and authority, this Court feels that the Ninth Circuit, although correct in spirit, was wrong in application, and therefore, this court reluctantly yields to the bonds of authority.

In examining the determinative question of exactly what Congress' intended purposes were in enacting the special assessment provision, the Court must look first to the explicit language of § 3013. *See Burlington N.R.R. v. Oklahoma Tax Commission,* 481 U.S. 454, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987). From the face of the statute, there are certain limited clues as to the underlying purpose of § 3013. In examining the face of the statute, Congress appeared to have a penal purpose in mind. First, the special assessment, while merely monetary, places an additional burden or penalty upon the defendant. *See United States v. Mayberry,* 774 F.2d 1018, 1021 (1985). Second, the assessment is only imposed upon a defendant following a conviction of a crime against the United States. *Mayberry,* 774 F.2d at 1021. This means the assessment is tied directly to a conviction and results as a consequence thereof, and does not fall upon the public at large. Third, the statute imposes a higher assessment upon those convicted of a felony than those convicted of a misdemeanor. *See*

*United States v. Ramos*, 624 F.Supp. 970, 973 (1985). This furthers the punitive ideals of society by making the punishment fit the crime. Lastly, by the terms of the statute, the special assessment will be collected in the same manner that fines are collected in criminal cases. Therefore, assessments are nothing more than "kissing cousins" of criminal fines. From the face of the statute, the Court's presumption of constitutionality is strengthened because of the close analogies to a penalty provision.[4]

Further support for the determination that special assessments are punitive in nature comes from the legislative history. The overall purpose of the Victims of Crime Assistance Act, of which § 3013 was introduced and which was finally signed into law as part of the legislative package known as the Comprehensive Crime Control Act of 1984, was provided by the accompanying report of the Senate Committee on the Judiciary:

> The purpose of S. 2423, the Victims of Crime Assistance Act, as reported by the Committee on the Judiciary, is to provide limited Federal funding to the States, with minimal bureaucratic "strings attached," for direct compensation and service programs to assist victims of Federal crime. In addition, it provides funds to improve Federal efforts which assist crime victims, and establishes a Federal Victim of Crime Advisory Committee. A Federal Victim Assistance Administrator in the Department of Justice will coordinate Federal efforts.

S.Rep. No 497, 98th Cong., 2d Sess. 1 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3607. This report shows the stated purpose to be assisting victims of criminal activity by establishing a relief fund. The Senate Report stated further:

> The purpose of imposing nominal assessment fees is to generate needed income to offset the cost of the [victims' assistance fund] authorized under S. 2423. Although substantial amounts will not result, these additional amounts will be helpful in financing the program and will constitute new income for the Federal government.

S.Rep. No. 497, at 13–14, 1984 U.S.Code Cong. & Admin.News, at 3619–20 [hereinafter S.Rep. No. 497]. Since Congress realized that the monetary gain from such an assessment would be minimal, this statement casts doubt on the fact that Congress' sole purpose was to raise revenue. *See Mayberry*, 774 F.2d at 1018. Therefore, Congress undoubtedly understood the statute would further penalize the convicted defendants. In addition, the Senate hearing report, S.Rep. No. 497, at 5 and 13, 1984 U.S.Code Cong. & Admin.News, at 3611 and 3619, and the original bill used the term "penalty assessment". Even though the final codified version of the statute reads "special assessment", the original Senate language, when read in conjunction with the statute as a whole, is also dispositive of Congress' purpose. Finally, Title I of the Comprehensive Crime Control Act of 1984, which was codified as 42 U.S.C. § 10601, required all assessments to be paid into a "Crime Victim Fund". The language of § 10601(b)(2), in its codified version refers to § 3013 as "penalty assessments". This reinforces the conclusion drawn from the face of the statute, that Congress intended § 3013 to be a penalty provision.

This Court feels that the evidence is persuasive, when coupled with the presumption of constitutionality, that § 3013 was passed with a punitive purpose in mind which incidentally created revenue to further another non-revenue purpose, the assistance of crime victims, so that the Origination Clause as applied by present interpretation is not offended.

However, the language used by the Senate Committee on the Judiciary in its report, where it was stated: "and will constitute new income for the Federal government", (S.Rep. No. 497 at 13–14, U.S.Code Cong. & Admin.News 1984, at 3619, 3620), coupled with the fact that the revenue generated could be used as general Federal

---

**4.** As this court noted earlier in this opinion, a statute is presumed to be constitutional. *See* *Flemming*, 363 U.S. at 617, 80 S.Ct. at 1376; *See also, Brown*, 25 U.S. (12 Wheat) at 436.

revenue, further coupled with the fact Congress could shift the use of the funds collected at any time, clearly creates the appearance that Congress contemplated this statute as a general revenue bill. *See generally, Munoz–Flores*, 863 F.2d at 658–59.

This Court understands the definition of the term "revenue" to be very comprehensive, even though as it is now interpreted by the Supreme Court it is narrowly defined.[5] In *United States v. Norton*, the court gave the definition of "revenue", as defined by Webster, as: "The income of a nation, derived from its taxes, duties or other sources, for the payment of the national expenses." *Norton*, 91 U.S. at 568. Under this definition, which is the plain unaltered definition of "revenue", this statute would clearly be a revenue bill.

The statute's statement of purpose, as set out earlier in S.Rep. 497 at 13–14, clearly demonstrates the special assessment was in part intended to add to a fund in order to defray the costs of the eligible state criminal victim assistance programs. Even with this purpose, the statute still clearly raised revenue and was not restricted as to in where that revenue could be spent. As stated in *Munoz–Flores*, "[i]ts purpose might have been held not to be the raising of revenue, despite the fact that the goal of funding state criminal victim assistance programs could have been accomplished only by the raising of revenue". *Munoz–Flores*, 863 F.2d at 658. Clearly, this statute would have violated the lexical definition set out earlier by the Court in this opinion. If this court were writing on a clean slate, without the narrowed definition of "revenue", this Court would adopt the definition as that intended by the "founding fathers" in 1789 and hold the

special assessment unconstitutional.[6] However, this Court is not operating with a clean slate, and therefore, the narrowed interpretation adopted by the Supreme Court, as set forth in *United States v. Norton*, 91 U.S. at 568, mandates we hold § 3013 does not violate the Origination Clause. Based on that authority, this Court cannot join the Ninth Circuit's holding in *Munoz–Flores*.

This Court notes, further, that Congress has amended 42 U.S.C. § 10601(c) and (d)(2), effective October 1, 1990, to read as follows:

(c) Distribution of excess; time limitation on deposit

(1)(A) If the total deposited in the Fund during a particular fiscal year reaches the ceiling sum described in subparagraph (B), the excess over the ceiling sum shall not be part of the Fund. The first $2,200,000 of such excess shall be available to the judicial branch for administrative costs to carry out the functions of the judicial branch under sections 3611 and 3612 of Title 18 and the remaining excess shall be deposited in the general fund of the Treasury.

(B) The ceiling sum referred to in Subparagraph (A) is-

(i) $125,000,000 through fiscal year 1991; and

(ii) $150,000,000 through fiscal year 1994.

(2) No deposits shall be made in the Fund after September 30, 1994.

(d)(2)

(C) Any deposits in the fund in a particular fiscal year in excess of $105,500,000, but not in excess of $110,000,000, shall be available for grants under section 10603(a) of this title.

---

5. The definition given by Justice Story in *United States v. Mayo*, 26 F.Cas. 1230 (C.C.D.Mass. 1813), has set the standard for the narrowing of the coverage afforded by the language of the origination clause. In fact almost eighty years ago the clause was dismissed as dead letter in the following terms: "It can hardly be said that it constitutes any safeguard against careless and corrupt finance in legislatures; and it must be admitted also that it has slowly been declining in public esteem." C. Beard, *American Government & Politics*, 706–07 (1910).

6. This Court is of the opinion that many of the commands of the Constitution have been adulterated and materially altered from their original meaning by interpretation. Here in the Bicentennial year of the Constitution, this Court again has to follow precedent which alters the common sense definition of a term or phrase of the Constitution. Rather than the "means" being shaped to meet the requirements of the "end", the "end" has been altered to fit the means.

(D) Any deposits in the Fund in a particular fiscal year in excess of $110,000,000 shall be available as follows:

(i) 47.5 percent shall be available for grants under section 10602 of this title;

(ii) 47.5 percent shall be available for grants under section 10603(a) of this title; and

(iii) 5 percent shall be available for grants under section 10603(c)(1)(B) of this title.

42 U.S.C. 10601(c) (1986), *amended by* Pub.L. No. 100–690, §§ 7121(a) and (b), 7129, (Supp.1989). By this amendment, Congress limited the use of the funds collected in excess of the ceiling amount, and extended the time period whereby the collected special assessment funds would be deposited in the Crime Victims Fund, thereby, lessening the chance such funds would be used for general governmental use. This amendment adds to the evidence upon which the Court finds § 3013 was not intended to be a general revenue statute as "revenue" is defined by the Supreme Court in *United States v. Norton,* 91 U.S. at 656.

Because the Court has concluded that any revenue raising resulting from the imposition of the special assessment is only incidental to Congress' primary purpose in enacting § 3013, to punish convicted defendants and to assist the victims of crime, the Court does not need to consider whether the legislation containing the special assessment originated in the House of Representatives. The Court will deny Defendant's Motion to Vacate the Special Assessment, i.e., to Correct an Illegal Sentence on the ground that Congress did not enact the special assessment provision to raise revenue, as that is defined by the Supreme Court, for the general support of the government.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion to Vacate the assessment as being an Incorrect Sentence be, and hereby is, DENIED.